# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: CORDUA RESTAURANTS, INC.,**
*Appellant*

---

2015-1432

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in No. 85/214,191.

---

Decided: May 13, 2016

---

ELIZABETH WOOD KING, Sutton McAughan Deaver PLLC, Houston, TX, argued for appellant. Also represented by ROBERT JAMES MCAUGHAN, JR., ALBERT BERTON DEAVER, JR.

THOMAS L. CASAGRANDE, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, argued for appellee Michelle K. Lee. Also represented by THOMAS W. KRAUSE, CHRISTINA HIEBER, MARY BETH WALKER.

CHARLES SARON KNOBLOCH, Arnold, Knobloch & Saunders, L.L.P., Houston, TX, for amicus curiae Houston Intellectual Property Law Association.

---

Before PROST, *Chief Judge,* DYK, and STOLL, *Circuit Judges.*

DYK, *Circuit Judge.*

Cordua Restaurants, Inc. ("Cordua") appeals from the final decision of the United States Patent and Trademark Office ("PTO") Trademark Trial and Appeal Board ("TTAB" or "Board") refusing registration of a stylized form of the mark CHURRASCOS.[1]  *In re Cordua Rests. LP*, 110 U.S.P.Q.2d 1227, 2014 WL 1390504 (TTAB 2014) ("*Cordua*") (affirming refusal of registration of Serial No. 85/214,191).   The Board's decision contains no harmful legal error, and the Board's finding that the mark is generic is supported by substantial evidence.  We affirm.

## BACKGROUND

Appellant Cordua owns and operates a chain of five restaurants branded as "Churrascos," the first of which opened in 1988.  The Churrascos restaurants serve a variety of South American dishes, including grilled meats; the Churrascos menu describes chargrilled "Churrasco Steak" as "our signature."  J.A. 34.  Cordua applied for registration of the service mark CHURRASCOS (in standard character format) and obtained U.S. Trademark Registration No. 3,439,321 on the Principal Register ("the '321 Registration") on June 3, 2008, for use of the word in connection with "restaurant and bar services; catering."

---

[1]    The stylized mark is .  Hereinafter we refer to this mark as "the stylized form of CHURRASCOS."

On January 10, 2011, Cordua filed U.S. Trademark Application Serial No. 85/214,191 ("the '191 Application"), the application at issue in this case, seeking protection of the stylized form of CHURRASCOS for use in connection with "Bar and restaurant services; Catering." J.A. 27. The trademark examiner rejected the '191 Application as merely descriptive and on the basis that "the applied-for mark is generic for applicant's services," barring registration under Lanham Act § 2(e)(1) (15 U.S.C. § 1052(e)(1)). J.A. 70. On June 14, 2012, the examiner issued a final rejection, again refusing registration of the stylized form of CHURRASCOS on the basis of descriptiveness and genericness. With respect to genericness, the examiner concluded that the term "churrascos" "refer[s] to beef or grilled meat more generally" and that the term "identifies a key characteristic or feature of the restaurant services, namely, the type of restaurant." J.A. 112–13.

Cordua appealed to the Board, which affirmed the examiner's refusal to register the mark for use in connection with restaurant services. The Board agreed with the examiner that "'churrascos' is the generic term for a type of cooked meat" and "a generic term for a restaurant featuring churrasco steaks." *Cordua*, 2014 WL 1390504, at *6. The Board held that Cordua's earlier registration of the underlying CHURRASCOS word mark (the '321 Registration) had no bearing on whether the stylized form of CHURRASCOS was generic. The Board also agreed with the examiner that the stylized form of CHURRASCOS was also ineligible for registration because it is merely descriptive of a restaurant serving barbecued steaks and because Cordua had not provided sufficient evidence of acquired distinctiveness. Cordua appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

DISCUSSION

I

We consider whether the Board erred in refusing registration on the ground that the mark is generic. We review the Board's legal conclusions de novo and its factual findings for substantial evidence. *Aycock Eng'g, Inc. v. Airflite, Inc.*, 560 F.3d 1350, 1355 (Fed. Cir. 2009). The standard of genericness is a question of law that we review de novo. *See In re Save Venice N.Y., Inc.*, 259 F.3d 1346, 1351–52 (Fed. Cir. 2001). The question of whether a particular mark is generic under the applicable standard is a question of fact, which we review for substantial evidence. *In re Hotels.com, L.P.*, 573 F.3d 1300, 1301 (Fed. Cir. 2009); *In re Reed Elsevier Props., Inc.*, 482 F.3d 1376, 1378 (Fed. Cir. 2007).

As the Supreme Court has held, "[g]eneric terms are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 194 (1985) (citing 15 U.S.C. §§ 1052, 1064). This is so because "[g]eneric terms, by definition incapable of indicating source, are the antithesis of trademarks, and can never attain trademark status." *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1569 (Fed. Cir. 1987); *see also Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 965 (Fed. Cir. 2015).

"A generic term 'is the common descriptive name of a class of goods or services.'" *Princeton Vanguard*, 786 F.3d at 965 (quoting *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989 (Fed. Cir. 1986)). "The critical issue in genericness cases is whether members of the relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *Ginn*, 782 F.2d at 989–90. Under *Ginn* a two-step test is applied to determine whether a

given term is generic. *Id.* at 990. "First, what is the genus of goods or services at issue? Second, is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?" *Id.*; *see also Princeton Vanguard*, 786 F.3d at 965; *Reed Elsevier*, 482 F.3d at 1378. "Evidence of the public's understanding of the mark may be obtained from 'any competent source, such as consumer surveys, dictionaries, newspapers and other publications.'" *Princeton Vanguard*, 786 F.3d at 965 (quoting *In re Northland Aluminum Prods., Inc.*, 777 F.2d 1556, 1559 (Fed. Cir. 1985)).

## II

At the outset we note that Cordua's existing registration of the CHURRASCOS word mark (the '321 Registration) does not preclude a finding that the stylized form of the mark is generic. Cordua contends that the CHURRASCOS word mark had achieved incontestable status under 15 U.S.C. § 1064 (Lanham Act § 14) because the '321 Registration was more than five years old at the time of the TTAB's decision and argues that the Board's "failure to fully consider the incontestable registration is error." Appellant's Br. at 55.

The PTO disputes Cordua's contention that the '321 Registration had achieved incontestable status at the time of appeal to the TTAB. We need not address this question, because even if the earlier registration were incontestable, incontestability is irrelevant to the question of genericness. Section 15(4) of the Lanham Act mandates that "no incontestable right shall be acquired in a mark which is the generic name for the goods or services or a portion thereof, for which it is registered." 15 U.S.C. § 1065(4). "[A] registered mark may be canceled at any time on the grounds that it has become generic." *Park 'N Fly*, 469 U.S. at 194. "Under the cancellation provisions

of § 14 [of the Lanham Act, 15 U.S.C. § 1064], a registered mark that has become generic may be cancelled at any time . . . . '[I]ncontestability is never a shield for a mark that is generic.'" 2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 12:60 (4th ed. 2016) ("McCarthy") (quoting *Retail Servs., Inc. v. Freebies Publ'g*, 364 F.3d 535, 548 (4th Cir. 2004)). Cordua conceded at argument that incontestability cannot protect a mark against a challenge of genericness. Thus, the Board did not err in declining to consider the alleged incontestability of the CHURRASCOS word mark in evaluating the genericness of the stylized form thereof.

Cordua also argues that under § 7(b) of the Lanham Act (15 U.S.C. § 1057(b)), registration on the Principal Register is prima facie evidence of a mark's validity, even if the mark has not achieved incontestable status. Cordua is correct that "[registration] is 'prima facie evidence of the validity of the registered mark . . . .'" *B&B Hardware, Inc. v. Hargis Indus.*, 135 S. Ct. 1293, 1300 (2015) (quoting 15 U.S.C. § 1057(b)). The presumption of validity applies generally against any challenge that the mark is invalid, including an allegation that the mark is generic. *See Coca-Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 (9th Cir. 1982) ("The general presumption of validity resulting from federal registration includes the specific presumption that the trademark is not generic."); *see also* 2 McCarthy § 12:60 ("When the plaintiff asserts a federal registration in an infringement suit, it constitutes a strong presumption that the term is not generic and defendant bears the burden of overcoming the presumption.").

But this proceeding does not involve a challenge to the '321 Registration and the CHURRASCOS word mark. The presumption of validity of 15 U.S.C. § 1057(b) does not carry over from registration of the older mark to a new application for registration of another mark that

happens to be similar (or even nearly identical). *See, e.g.*, *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1174 (Fed. Cir. 2009) ("Applicant's allegations regarding similar marks are irrelevant because each application must be considered on its own merits."); *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to Nett Designs' application, the PTO's allowance of such prior registrations does not bind the Board or this court."). The PTO is required to examine all trademark applications for compliance with each and every eligibility requirement, including non-genericness, even if the PTO earlier mistakenly registered a similar or identical mark suffering the same defect. Thus, whether or not the term "churrascos" was generic when it was registered, we, like the Board, must evaluate the evidence in the present record to determine whether there is sufficient evidence to establish that it is ineligible.

In any event, regardless of the presumption of validity, in registration proceedings the PTO always bears the burden of proving genericness by clear and convincing evidence. "The Patent and Trademark Office (PTO) bears the burden of establishing that a proposed mark is generic, and must demonstrate generic status by clear [and convincing] evidence." *Hotels.com*, 573 F.3d at 1302 (citations omitted); *see also In re La. Fish Fry Prods., Ltd.*, 797 F.3d 1332, 1335 (Fed. Cir. 2015); *In re Steelbuilding.com*, 415 F.3d 1293, 1296 (Fed. Cir. 2005); Trademark Manual of Examining Procedure ("TMEP") § 1209.01(c)(i). Here, the Board's opinion acknowledged the presumption of non-genericness and the correct burden of proof: "When a proposed mark is refused registration as generic, the Office has the burden of proving genericness by 'clear evidence' thereof." *Cordua*, 2014 WL 1390504, at *2 (citing *Hotels.com*, 573 F.3d at 1302). The Board sustained the examiner's determination that "churrascos" is

a generic term with respect to restaurant services only after concluding that the examiner had proved this fact by clear and convincing evidence. "[T]he examining attorney has established by clear evidence that the general public (the consumers of restaurant services) understands that churrascos is generic for a type of restaurant, specifically a restaurant that serves 'churrascos.'" *Id*. at *3.[2]

---

[2]    Cordua appears to argue that the examiner's determination that the CHURRASCOS word mark is trademark-eligible is binding on this case as a matter of issue preclusion. In *B&B Hardware*, the Supreme Court made clear that a decision of the TTAB may have issue preclusive effect. "So long as the other ordinary elements of issue preclusion [set forth in § 27 of the Restatement (Second) of Judgments] are met, when the usages adjudicated by the TTAB are materially the same as those before the district court, issue preclusion should apply." 135 S. Ct. at 1310. The Court held that issue preclusion did apply to a TTAB decision in an *inter partes* opposition proceeding, noting that the procedures there resembled the procedures of a district court. *Id*. at 1309 (observing, *inter alia*, that, in opposition proceedings, "the TTAB has adopted almost the whole of Federal Rule of Civil Procedure 26" concerning discovery).

But there is no suggestion in *B&B Hardware* that an examiner's decision to register a mark or to refuse registration satisfies the traditional requirements of issue preclusion. *See* Restatement (Second) of Judgments § 27 (1982) (requiring that an issue be "actually litigated" between parties for issue preclusion to apply); *see also* 4A Callmann on Unfair Competition, Trademarks and Monopolies § 26:68 (4th ed. 2015) ("A decision in an ex parte registration proceeding does not have preclusive effect in a subsequent inter partes proceeding, though statements

### III

We next consider whether the Board properly determined that the stylized form of CHURRASCOS is generic.

### A

Cordua argues that the Board failed to apply the *Ginn* test correctly. The *Ginn* test requires the Board to determine, first, "what is the genus of goods or services at issue?" and, second, "is the term sought to be registered or retained on the register understood by the relevant public primarily to refer to that genus of goods or services?" *Ginn*, 782 F.2d at 990. Cordua complains, *inter alia*, that the Board (and the examiner) misapplied the *Ginn* test by concentrating on the wrong genus of services, focusing improperly on Cordua's own services rather than on the wider genus identified in the '191 Application, restaurant services.[3]

At a few points in its decision, the Board's analysis of genericness addressed Cordua's own restaurant services. The Board's opinion noted, for example, that "Churrasco Steak" is advertised as the "signature" dish of Cordua's Churrascos restaurants and is listed as the first entrée on its menu, *Cordua*, 2014 WL 1390504, at *6, and suggested that "churrascos" is generic as applied to Cordua's own restaurants: "The 'Churrasco' steak is clearly one of the primary items applicant's CHURRASCOS restaurants serve," *id.* at *6.

---

made during ex parte proceedings may be considered in later proceedings.").

[3] Cordua applied to register the stylized form of CHURRASCOS as a mark for "Bar and restaurant services; Catering." J.A. 27.

We agree with Cordua that "a proper genericness inquiry focuses on the description of services set forth in the certificate of registration." *Magic Wand, Inc. v. RDB, Inc.*, 940 F.2d 638, 640 (Fed. Cir. 1991). "The authority is legion that the question of registrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the application regardless of what the record may reveal as to the particular nature of an applicant's goods, the particular channels of trade or the class of purchasers to which sales of the goods are directed." *Octocom Sys., Inc. v. Hous. Comput. Servs., Inc.*, 918 F.2d 937, 942 (Fed. Cir. 1990) (citing cases); *see also In re 1800Mattress.com IP, LLC*, 586 F.3d 1359, 1361, 1363 (Fed. Cir. 2009) (defining the genus of goods or services at issue as the genus of goods or services for which the applicant sought protection, as set forth in its trademark application); *Can. Imperial Bank of Commerce v. Wells Fargo Bank, Nat'l Ass'n*, 811 F.2d 1490, 1492–93 (Fed. Cir. 1987).

Thus, the correct question is not whether "churrascos" is generic as applied to Cordua's own restaurants but rather whether the term is understood by the restaurant-going public to refer to the wider genus of restaurant services. *See Ginn*, 782 F.2d at 990; *see also Princeton Vanguard*, 786 F.3d at 966; *Reed Elsevier*, 482 F.3d at 1379. The Board's suggestion that "churrascos" is generic as applied to Cordua's own restaurant services misses the point.[4] *Cordua*, 2014 WL 1390504, at \*6.

---

[4]    We do not suggest that Cordua's own advertising could never be pertinent to the public's understanding of the term "churrascos" but rather that the focus must be on the public's understanding with respect to the overall genus of restaurant services, not limited to the term's connection with Cordua's own restaurants.

However, the Board's apparent error in considering Cordua's own restaurant services is harmless. At the first step of the *Ginn* test, the Board properly determined "[t]he genus of goods or services at issue," *id.* at *2 (quoting *Ginn*, 782 F.2d at 990), and concluded that "the genus of the services at issue is adequately defined by a portion of the recitation of services in the application, specifically 'restaurant services,'" *id.* at *2 (citing *Magic Wand*, 940 F.2d at 640). This aspect of the Board's decision reflects the correct approach, and Cordua agrees that restaurant services is the relevant genus.

B

We next address whether the term "churrascos" is generic for restaurant services generally, as identified in the '191 Application. The Board found, "[b]ased on the evidence that 'churrascos' is the generic term for a type of cooked meat," that "'churrascos' is a generic term for a restaurant featuring churrasco steaks." *Cordua*, 2014 WL 1390504, at *6. The Board's decision in this respect is supported by substantial evidence.

Cordua concedes that the term "churrasco" is a word in Spanish and Portuguese referring to barbecue, and the '191 Application itself acknowledges that "[t]he English translation of churrascos in the mark is barbecue." J.A. 30. "Under the doctrine of foreign equivalents, foreign words from common languages are translated into English to determine genericness, descriptiveness, as well as similarity of connotation . . . ." *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1377 (Fed. Cir. 2005); *see also In re Spirits Int'l, N.V.*, 563 F.3d 1347, 1351 (Fed. Cir. 2009). Because "churrasco" is a common word in Spanish and Portuguese and because the '191 Application itself concedes that "churrascos" means "barbecue," the PTO would have been justified in translating "churrascos" into "barbecue" and

subsequently determining whether the term "barbecue" is generic when applied to restaurant services. Indeed, the examiner aptly remarked that "a foreign equivalent of a generic English word is no more registrable than the English word itself." J.A. 71.

But the examiner, and the Board, did not rely here on the doctrine of foreign equivalents. Instead, the examiner and the Board found that "churrasco" is used in the *English* language to refer to grilled meat. The evidence before the Board included, *inter alia*, three English-language dictionaries that define "churrasco" as grilled meat. *See Cordua*, 2014 WL 1390504, at *3. Two of the dictionaries specify that the meat is steak or beef. *Id.* The dictionaries constitute evidence that "churrasco" is a generic English-language term for grilled meat, especially grilled steak. Cordua essentially concedes this point. In its brief, Cordua concedes "'churrasco' can be used as a noun meaning grilled steak specially prepared in the churrasco style." Appellant's Br. at 47.

However, Cordua contends that the addition of the "S" at the end of CHURRASCOS makes the term non-generic. That is, while Cordua concedes that "churrasco" describes a grilled steak, it argues that adding an "S" changes the term's meaning because "churrascos" is not the proper pluralization of "churrasco" in Spanish. While each trademark must always be evaluated individually, pluralization commonly does not alter the meaning of a mark. *See In re Belgrade Shoe Co.*, 411 F.2d 1352, 1353 (CCPA 1969); *Wilson v. Delaunay*, 245 F.2d 877, 878 (CCPA 1957). Since "churrascos" is an English-language term, there is nothing in the record to indicate that the addition of the "S" at the end alters its meaning (beyond making the word plural). In fact, the Board found that at least one English-language dictionary presents "churrascos" as the plural form of "churrasco," meaning meat cooked over an open fire. *Cordua*, 2014 WL 1390504, at *3. The

Board also credited an article that appeared in an online (English-language) version of Esquire Magazine that used the precise term "churrascos" to refer to "juicy, charred slabs" of tenderloin steak. *Id.* at *4. There is, therefore, substantial evidence to support the Board's conclusion that "'churrascos' is the generic term for a type of cooked meat." *Id.*

Cordua next argues that "churrascos" (or "churrasco") refers specifically to a style of grilling meat and not to restaurant services. But a term can be generic for a genus of goods or services if the relevant public—here, the restaurant-going public—understands the term to refer to a key aspect of that genus—e.g., a key good that characterizes a particular genus of retail services. "A generic name of goods may also be a generic name of the service of selling or designing those goods." 2 McCarthy § 12:23. We have held that "[t]he test is not only whether the relevant public would itself *use* the term to describe the genus, but also whether the relevant public would *understand* the term to be generic." *1800Mattress.com*, 586 F.3d at 1364. "[A]ny term that the relevant public understands to refer to the genus . . . is generic." *Id.*

In *1800Mattress.com*, we affirmed the Board's determination that MATTRESS.COM is generic for "online retail store services in the field of mattresses, beds, and bedding" because the term "mattress" identified a key aspect of such services. *Id.* at 1361, 1364. In *Hotels.com*, we affirmed the Board's determination that HOTELS.COM is generic for "providing information for others about temporary lodging" and "travel agency services" because the term "hotels" "names a key aspect" of such services. 573 F.3d at 1301, 1304, 1306. And in *Reed Elsevier*, we affirmed the Board's determination that LAWYERS.COM is generic for "information exchange concerning the law, legal news, and legal services," because "an integral, if not the paramount, aspect of infor-

mation exchange about legal services as Reed defines it concerns identifying and helping people to select lawyers." 482 F.3d at 1379, 1380 (alterations and internal quotation marks omitted); *see also In re Tires, Tires, Tires, Inc.*, 94 U.S.P.Q.2d 1153, 1157, 2009 WL 4075360, at \*5 (TTAB 2009) (holding that TIRES TIRES TIRES is generic for retail tire sales); *In re CyberFinancial.Net, Inc.*, 65 U.S.P.Q.2d 1789, 1791, 2002 WL 1980117, at \*3 (TTAB 2002) ("[A] term which is the generic name of a particular category of goods is likewise generic for any services which are directed to or focused on that class of goods.").[5]

Thus, Cordua is wrong that "a dish, even a specialty dish, does not identify the genus of restaurant services." Appellant's Br. at 33. If the relevant public would understand a term denoting a specialty dish to refer to a key aspect of restaurant services, then the term is generic for restaurant services. *See Hunt Masters, Inc. v. Landry's Seafood Rest., Inc.*, 240 F.3d 251, 254 (4th Cir. 2001) (holding that "crab house" is a generic term referring to a class of restaurants that serve crabs).

---

[5]    Cordua argues that two precedential decisions of the TTAB, *In re Le Sorbet, Inc.*, 228 U.S.P.Q. 27, 1985 WL 71953 (TTAB 1985), and *In re France Croissant, Ltd.*, 1 U.S.P.Q.2d 1238, 1986 WL 83305 (TTAB 1986), hold that the generic name of a food is merely descriptive but not generic for a restaurant serving that food. The PTO points out that those cases only addressed the issue of descriptiveness and did not reach genericness. In any event, the *1800Mattress.com*, *Hotels.com*, and *Reed Elsevier* decisions of our court supersede precedent of the TTAB and make clear that a term is generic if the relevant public understands it to refer to a key aspect of the genus of goods or services in question. 586 F.3d at 1364; 573 F.3d at 1304, 1306; 482 F.3d at 1379–80.

There is substantial evidence in the record that "churrascos" refers to a key aspect of a class of restaurants because those restaurants are commonly referred to as "churrasco restaurants." For example, the TTAB's decision points to one newspaper article praising a "Brazilian churrasco restaurant" notable for its "sizzling food" served "on spits straight from the fire"; a second article that describes a "churrasco restaurant" as a restaurant distinguished by serving "[m]eat of all kinds"; and a third article that characterizes a "churrasco restaurant" as a kind of restaurant that serves "South American mixed grill." *Cordua*, 2014 WL 1390504, at *3–4. Each of these articles constitutes evidence that the restaurant-going public understands the term "churrascos" to refer to a type of restaurant as well as a dish. Each article therefore supports the Board's conclusion that "there is a class of restaurants that have churrascos as a central focus of their services, and that both competitors in the field and consumers use the term 'Churrasco' to refer to this type of restaurant." *Id.* at *6. We perceive no error in this part of the Board's analysis.

C

Cordua argues that even if "churrascos" is generic as to "churrasco restaurants" (also known as "churrascarias"), it is not generic as to all restaurant services. But a term is generic if the relevant public understands the term to refer to part of the claimed genus of goods or services, even if the public does not understand the term to refer to the broad genus as a whole. Thus, the term "pizzeria" would be generic for restaurant services, even though the public understands the term to refer to a particular sub-group or type of restaurant rather than to all restaurants. *See, e.g.*, *Northland Aluminum*, 777 F.2d at 1561 (affirming the TTAB's determination that BUNDT is generic "for a type of ring cake"); *In re Analog Devices, Inc.*, 6 U.S.P.Q.2d 1808, 1810, 1988 WL 252496,

at \*3 (TTAB 1988) ("There is no logical reason to treat differently a term that is generic of a category or class of products where some but not all of the goods identified in an application fall within that category."), *aff'd*, 871 F.2d 1097 (Fed. Cir. 1989) (unpublished); *see also Otokoyama Co., Ltd. v. Wine of Japan Imp., Inc.*, 175 F.3d 266, 271 (2d Cir. 1999) ("Generic words for sub-classifications or varieties of a good are [ ] ineligible for trademark protection."). "A registration is properly refused if the word is the generic name of any of the goods or services for which registration is sought." 2 McCarthy § 12:57. A "term need not refer to an entire broad species, like 'cheese' or 'cake,' in order to be found generic." 1–2 Anne Gilson LaLonde, Gilson on Trademarks § 2.02[7][a] (2011).

We do not, of course, suggest that the term "churrascos" is necessarily generic as to any and all restaurant services. Had another applicant applied for registration of the mark CHURRASCOS in connection not with the entire broad genus of restaurant services but instead with a narrower sub-genre of restaurant at which grilled meat is not a key aspect of the service provided—for example, vegetarian or sushi restaurants—the result could well have been different. "[B]y expanding or contracting the definition of a 'genus' of products, a court can substantially affect the final determination of whether a term is 'generic.'" 2 McCarthy § 12:23. It is up to the applicant to identify the genus of goods or services for which it seeks protection. *See* 15 U.S.C. § 1051(a)(2), (b)(2); 37 C.F.R. §§ 2.32(a)(6), 2.71(a); TMEP § 1402.01; *see also Stone Lion Capital Partners, L.P. v. Lion Capital LLP*, 746 F.3d 1317, 1324 (Fed. Cir. 2014) ("Parties that choose to recite services in their trademark application that exceed their actual services will be held to the broader scope of the application."); *Octocom Sys.*, 918 F.2d at 942 ("[R]egistrability of an applicant's mark must be decided on the basis of the identification of goods set forth in the

application . . . .”). The PTO will generally accept any identification of goods or services so long as it is “specific, definite, clear, accurate, and concise.” TMEP § 1402.01; *see also In re Omega SA*, 494 F.3d 1362, 1365 (Fed. Cir. 2007) (holding that “[i]t is within the discretion of the PTO to require that one’s goods be identified with particularity” in a trademark application) (quoting *In re Water Gremlin Co.*, 635 F.2d 841, 845 (CCPA 1980)).

Here, Cordua sought registration of the stylized form of CHURRASCOS in connection with the broad genus of all restaurant services, and the question of genericness must be evaluated accordingly. As the PTO points out, registration of the stylized form of CHURRASCOS on the Principal Register would give Cordua rights that it could enforce against all others providing restaurant services, including operators of traditional Latin American churrascarias (churrasco restaurants) that specialize in meat grilled in the churrasco style. *See* 15 U.S.C. §§ 1057(a)–(b), 1115; *see also Stone Lion Capital Partners*, 746 F.3d at 1324 (“[T]he services recited in the application determine the scope of the post-grant benefit of registration.”); *Jean Patou, Inc. v. Theon, Inc.*, 9 F.3d 971, 975 (Fed. Cir. 1993) (“The benefits of a Principal Register registration apply with respect to the goods named in the registration . . . .”); 2 McCarthy § 24:65. By seeking broad protection for its mark, Cordua obliged the PTO to direct its genericness inquiry to the broad category of restaurants generally.[6]

---

[6] At argument, Cordua requested, for the first time, that this court remand the case back to the PTO to permit Cordua to amend the ’191 Application and narrow the identified genus of services. No such request was made before the PTO. Such a request comes too late when a case is on appeal before our court. *Singleton v. Wulff*, 428

## IV

Finally, we consider whether the stylization of CHURRASCOS in the '191 Application renders the mark eligible. As the Board has previously held, "[a] display of descriptive or otherwise unregistrable matter is not registrable on the Principal Register unless the design features of the asserted mark create an impression on the purchasers separate and apart from the impression made by the words themselves, or if it can be shown by evidence that the particular display which the applicant has adopted has acquired distinctiveness." *In re Sadoru Grp., Ltd.*, 105 U.S.P.Q.2d 1484, 1486, 2012 WL 3875730, at *2 (TTAB 2012); *see also Northland Aluminum*, 777 F.2d at 1561 (affirming the TTAB's rejection, as generic, of a stylized mark that was "not so distinctive as to create a commercial impression separate and apart from the" word itself); 2 McCarthy § 12:40; *cf. In re Chem. Dynamics, Inc.*, 839 F.2d 1569, 1570 (Fed. Cir. 1988) ("In deciding whether the design background of a word mark may be separately registered, the essential question is whether or not the background material is or is not inherently distinctive. . . . If the background portion is inherently distinctive, no proof of secondary meaning need be introduced; if not, such proof is essential.") (citation, internal quotation marks, and emphasis omitted). The Board concluded that "the display of Applicant's mark, consisting primarily of stylized letters, does not make the applied-for matter registrable, despite the genericness of the term CHURRASCOS, since it does not create a separate commercial impression over and above that made by the generic term." *Cordua*, 2014 WL 1390504, at *7.

---

U.S. 106, 120 (1976); *see also Golden Bridge Tech., Inc. v. Nokia, Inc.*, 527 F.3d 1318, 1322–23 (Fed. Cir. 2008).

While Cordua now describes the stylized form of CHURRASCOS as "highly stylized," "using a unique and arbitrary font," Appellant's Br. at 10, Cordua did not argue before the Board and does not argue now that this stylization creates a separate impression, *see Cordua*, 2014 WL 1390504, at *8 n.11.  Cordua also did not argue that the stylization (i.e., the graphic quality) of the stylized form of CHURRASCOS has acquired distinctiveness; instead, it has argued only that the underlying word mark has acquired distinctiveness.  The stylized nature of the mark cannot save it from ineligibility as generic.

CONCLUSION

We affirm the TTAB's decision that the stylized form of CHURRASCOS applied for in the '191 Application is generic as applied to restaurant services and therefore trademark-ineligible.  Because we hold that the Board did not err in concluding that CHURRASCOS is generic, we do not reach the Board's alternate ground of ineligibility, descriptiveness.

**AFFIRMED**