This Opinion is a
Precedent of the TTAB

Mailed: October 14, 2021

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Jonathan Sibony*

————

Serial No. 86293054

————

Peter S. Sloane and Michelle J. Levin of Leason Ellis LLP,
    for Jonathan Sibony.

Katherine Stoides, Trademark Examining Attorney, Law Office 101,
    Zachary R. Sparer, Managing Attorney.

————

Before Bergsman, Hudis and Allard,
    Administrative Trademark Judges.

Opinion by Hudis, Administrative Trademark Judge:

Jonathan Sibony ("Applicant") seeks registration on the Principal Register of the

standard character mark REPUBLIC OF LONDON for "belts for clothing; blazers;

blouses; capris; coats; dresses; jeans; pants; pullovers; shirts; skirts; suits; sweaters;

t-shirts; ties" in International Class 25.[1]

---

[1] Application Serial No. 86293054 was filed on May 28, 2014, under Trademark Act Section
1(b), 15 U.S.C. § 1051(b), based upon Applicant's allegation of a bona fide intention to use the
mark in commerce. The Application also recites Trademark Act Section 44(d), 15 U.S.C.
§ 1126(d), as an alternative filing basis, derived from Applicant's reliance on his Canadian
home country application filed on November 29, 2013. (Footnote continued on following page.)

The Trademark Examining Attorney refused registration under Trademark Act Section 2(e)(3), 15 U.S.C. § 1052(e)(3), on the ground that Applicant's mark, as applied to the goods identified in the application, is primarily geographically deceptively misdescriptive of them because the goods do not originate from London England. Applicant readily acknowledges that "the goods associated with Applicant's mark REPUBLIC OF LONDON do not originate in London," and that Applicant's goods "will not be manufactured, packaged, shipped from, [or] sold in 'London.'"[2]

After the Trademark Examining Attorney made the refusal final, Applicant appealed to this Board. The appeal is fully briefed. We reverse the refusal to register.

## I. Applicable Law regarding Refusal of Registration on the Ground that the Mark is Primarily Geographically Deceptively Misdescriptive

Trademark Act Section 2(e)(3) requires refusal of registration of marks that "when used on or in connection with the goods of the applicant is primarily geographically

---

On October 27, 2015, Applicant filed an Amendment to Allege Use pursuant to Trademark Act Section 1(c), 15 U.S.C. § 1051(c), amending the Application to one based upon Applicant's claim of first use anywhere and first use in commerce since at least as early as February 4, 2014, under Trademark Act Section 1(a), 15 U.S.C. § 1051(a). The USPTO accepted Applicant's Amendment to Allege Use on November 17, 2015.

On June 30, 2020, Applicant advised the USPTO that he elected not to proceed to registration under Trademark Section 44(e), 15 U.S.C. § 1126(e), which otherwise would have claimed his Canadian registration (once issued) as a basis for registration. However, Applicant retained his priority claim under Trademark Act Section 44(d).

[2] Office Action Response of March 18, 2015, at TSDR 1-2; *see also* Applicant's Brief, 4 TTABVUE 8. Page references herein to the application record refer to the online database of the USPTO's Trademark Status & Document Retrieval ("TSDR") system. All citations to documents contained in the TSDR database are to the downloadable .pdf versions of the documents in the USPTO TSDR Case Viewer. References to the briefs on appeal refer to the Board's TTABVUE docket system. Before the TTABVUE designation is the docket entry number; and after this designation are the page references, if applicable.

deceptively misdescriptive of them." Applicant and the Examining Attorney agree[3] that to support a refusal to register a mark as primarily geographically deceptively misdescriptive under this section, the Examining Attorney must demonstrate that:

> (1) the primary significance of the mark is a generally known geographic place or location;
>
> (2) the goods for which applicant seeks registration do not originate in the geographic place identified in the mark;
>
> (3) purchasers would be likely to make a goods-place association; that is, purchasers would be likely to believe that the goods originate in the geographic place identified in the mark; and
>
> (4) the misrepresentation regarding the geographic origin of the goods would be a material factor for a significant portion of the relevant consumers deciding whether to buy the goods in question.

*See In re Miracle Tuesday, LLC*, 695 F.3d 1339, 104 USPQ2d 1330, 1332 (Fed. Cir. 2012) (citing *In re Cal. Innovations Inc.*, 329 F.3d 1334, 66 USPQ2d 1853, 1858 (Fed. Cir. 2003)); *In re Les Halles De Paris J.V.*, 334 F.3d 1371, 67 USPQ2d 1539, 1541 (Fed. Cir. 2003); *see also In re Spirits Int'l, N.V.*, 563 F.3d 1347, 90 USPQ2d 1489, 1493 (Fed. Cir. 2009) (holding that the test for materiality incorporates a requirement that a "significant portion of the relevant consumers be deceived"). Applicant and the Examining Attorney, however, disagree how these elements apply to the facts of this appeal.

To support a refusal to register geographic matter, as embodied in the first factor of the *Miracle Tuesday* test propounded above, the Trademark Act requires that the mark be **primarily** geographic, that is, its primary significance to the relevant

---

[3] Applicant's Brief, 4 TTABVUE 6; Examining Attorney's Brief, 6 TTABVUE 6.

consumers in the United States is that of a generally known geographic location. *See, e.g.*, *In re Wada*, 194 F.3d 1297, 52 USPQ2d 1539, 1540 (Fed. Cir. 1999) (NEW YORK held to have primarily geographic significance; Court was not persuaded by assertions that the composite NEW YORK WAYS GALLERY evokes a gallery that features New York "ways" or "styles"). If, however, when viewed as a whole, a composite mark would not be likely to be perceived as identifying the geographic origin of the goods or services, then the mark is regarded as arbitrary, fanciful, or suggestive and cannot be primarily geographically descriptive, or primarily geographically deceptively misdescriptive. *Compare In re Sharky's Drygoods Co.*, 23 USPQ2d 1061, 1062-63 (TTAB 1992) (PARIS BEACH CLUB, applied to T-shirts and sweatshirts, not deceptive under Trademark Act Section 2(a), the Board reasoning that because Paris is not located on an ocean or lake, and does not have a beach, the juxtaposition of "Paris" with "Beach Club" results in an incongruous phrase which purchasers would view as a humorous mark, a take-off on the fact that Paris is known for haute couture. Thus, purchasers would not necessarily expect T-shirts and sweatshirts so marked to originate in the city of Paris).

## II.  Analysis of Applicant's Mark and Goods, and the Prosecution Record regarding whether the Mark Is Primarily Geographically Deceptively Misdescriptive

We now consider whether Applicant's REPUBLIC OF LONDON mark was properly refused registration as primarily geographically deceptively misdescriptive based on the facts made of record.

### A. Whether the Primary Significance of REPUBLIC OF LONDON is a Generally Known Geographic Place or Location

The Examining Attorney submitted ample evidence during prosecution that London is the capital city of England and the United Kingdom, known for fashion and apparel manufacture.[4] However, "LONDON" is not the mark in question. As Applicant points out, "there is no evidence of record upon which to conclude that relevant consumers would believe that the primary significance of the overall mark REPUBLIC OF LONDON is a generally known geographic place or location. Notably, there is no such place as the 'Republic of London.'"[5] The Examining Attorney concedes that "REPUBLIC OF LONDON, literally, is fictitious."[6] As the Examining Attorney also acknowledges, while the USPTO may consider the significance of each element separately, a mark comprising geographic wording coupled with additional wording still must be considered as a whole. *See In re Save Venice N.Y. Inc.*, 259 F.3d 1346, 59 USPQ2d 1778, 1782 (Fed. Cir. 2001) (citing *In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985)).

In their arguments over the primary significance of the REPUBLIC OF LONDON mark as a whole, the Examining Attorney and Applicant rely on: (1) registrations (and in Applicant's case also a pending application) of "… REPUBLIC OF …" and "… LONDON …" marks issued to third parties, and (2) prior precedential Federal Circuit and Board decisions addressing marks refused registration on the ground that they

---

[4] Online news articles, WIKIPEDIA and encyclopedia entries, and dictionary definitions. Office Action of September 18, 2014, at TSDR 5-59; Office Action of August 13, 2020, at TSDR 5-49.

[5] Applicant's Brief, 4 TTABVUE 7.

[6] Examining Attorney's Brief, 6 TTABVUE 8.

were primarily geographically deceptively misdescriptive. We address the significance of the third-party registrations and prior decisions in turn.

### 1. Significance of Marks Registered to Third Parties

The Examining Attorney made of record 40 registrations of "… REPUBLIC OF …" marks issued to third parties for a variety of goods and services.[7] The Examining Attorney cites these third-party registrations, particularly those whose marks incorporate a geographic term (e.g., "AUSTIN," "KALIFORNIA," "SMITH MOUNTAIN LAKE, VA," "ENCINITAS," "TEXAS," "NAPA" and "RIO GRANDE"), to support the arguments that "consumers are accustomed to encountering marks that combine "REPUBLIC" with the name of a geographic location," and "[a]s these referenced registrations include a disclaimer of the geographic location, it is clear that the combination of terms results in marks that maintain their overall geographic significance."[8]

---

[7] Suspension Notice of July 13, 2017, at TSDR 6-104. In many of these registrations, "REPUBLIC OF" is found as a prefix at the beginning of the mark. In many others, "REPUBLIC OF" is found within the middle of the mark. But in these references "REPUBLIC OF" is never found at the end of mark. No matter where "REPUBLIC OF" is displayed in the mark, it is always part of a longer phrase (e.g., THE REPUBLIC OF TEA, THE PEOPLE'S REPUBLIC OF PASH PASH and design, BUILT IN THE REPUBLIC OF TEXAS, etc.).

[8] Examining Attorney's Brief, 6 TTABVUE 7-8. Overall, we find that many of the third-party registrations cited by the Examining Attorney cut the other way, demonstrating "REPUBLIC OF …" would be considered by consumers to be a common witticism clearly indicating a fictitious place, for example: REPUBLIC OF SPORT, REPUBLIC OF GAMERS, REPUBLIC OF MEN, REPUBLIC OF PINK BLISS, REPUBLIC OF PARADISE, REPUBLIC OF PIXELS, and other similar third-party marks cited by the Examining Attorney.

Moreover, in this appeal, there is no issue of whether a disclaimer of part of the mark is appropriate. Here, the question is whether the entire phrase, REPUBLIC OF LONDON, would be viewed by consumers as a fictitious place and thus not primarily geographically deceptively misdescriptive of goods not originating from the city of London. Further, a disclaimer of the geographic term in a composite mark will not overcome a Section 2(e)(3) refusal. TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1213.03(a) (2021).

Applicant made of record eight registrations and one application for marks including the term "LONDON" that were issued to or applied for by third parties for clothing products in International Class 25.[9] Applicant cites these third-party registrations, particularly for the marks LONDON FOG, LONDON HARBOR and CITY OF LONDON (the second and third of which reflect actual well-known locations), to support his arguments that "[c]onsumers of clothing have long been sophisticated enough to recognize that clothing brands do not necessarily reflect the place where the goods are manufactured[,]" "[c]redit should be given to American consumers who have long been accustomed to clothing brands playing off the cachet of the British capital ...," and "there is nothing on the face of the registrations to suggest that the goods are in fact made in London."[10]

For a number of reasons, we find the third-party marks cited by both the Examining Attorney and Applicant to be of little relevance. To begin, 25 of the registrations the Examining Attorney made of record are for products far removed from the clothing products at issue and, therefore, are not probative. *Cf. In re i.am.symbolic, LLC*, 866 F.3d 1315, 123 USPQ2d 1744, 1751 (Fed. Cir. 2017) (disregarding third-party registrations for other types of goods where the proffering party had neither proven nor explained that they were related to the goods of interest). This leaves 15 registrations cited by the Examining Attorney that could be

---

[9] Response to Suspension Inquiry of June 30, 2020, at TSDR 30-45. In seven of the issued registrations, four of which are owned by the same entity for the mark LONDON FOG, "LONDON …" is found as a prefix at the beginning of the mark. In two instances, "… LONDON" is found as a suffix at the end of the mark.

[10] Applicant's Brief, 4 TTABVUE 9-10.

of potential relevance. Of these 15 registrations, only four are for marks containing a geographic term.

We further give no weight to Applicant's citation to the pending application to register the mark LONDON and Design for clothing (Serial No. 87664680). Third-party applications are evidence only of the fact that they have been filed, *In re Toshiba Med. Sys. Corp.*, 91 USPQ2d 1266, 1270 n.8 (TTAB 2009), and have no other probative value, *Interpayment Svcs. Ltd. v. Docters & Thiede,* 66 USPQ2d 1463, 1468 n.6 (TTAB 2003).

In the final analysis, when determining whether a mark is eligible for registration, each application must be considered on its own record. *In re Cordua Rests., Inc.*, 823 F.3d 594, 600, 118 USPQ2d 1632, 1635 (Fed. Cir. 2016) ("[The Federal Circuit], like the Board, must evaluate the evidence in the present record to determine whether there is sufficient evidence [to support a refusal]...."); *In re Shinnecock Smoke Shop*, 571 F.3d 1171, 1174, 91 USPQ2d 1218, 1221 (Fed. Cir. 2009) ("Applicant's allegations regarding similar marks are irrelevant because each application must be considered on its own merits."); *In re Nett Designs, Inc.*, 236 F.3d 1339, 1342, 57 USPQ2d 1564, 1566 (Fed. Cir. 2001) ("Even if some prior registrations had some characteristics similar to Nett Designs' application, the [US]PTO's allowance of such prior registrations does not bind the [Trademark Trial and Appeal] Board or this court.").

### 2.   Significance of Prior Precedential Decisions

While the decisions cited by Applicant and the Examining Attorney, in part, discuss the impact of other matter in a mark in terms of the goods/place association,

the reasoning in those decisions in essence pertains to the primary significance of the mark at issue. Applicant places chief reliance on *In re Sharky's Drygoods*, 23 USPQ2d at 1062-63, discussed above, in which the Board held that PARIS BEACH CLUB, applied to T-shirts and sweatshirts, was not deceptive under Trademark Act Section 2(a). In its decision, the Board reasoned:

> The burden is on the Examining Attorney to prove that purchasers would expect that the T-shirts and sweatshirts identified in the application and sold under the mark PARIS BEACH CLUB have their origin in Paris. (citation omitted). Here, the only "evidence" is applicant's concession and/or the judicially noticed facts that Paris is a well-known geographic place which is a center of haute couture. In view of the incongruous and humorous nature of the mark [because Paris is not located on an ocean or lake, and does not have a beach], we cannot conclude from this "evidence" that the American public would expect that T-shirts and sweatshirts bearing the mark PARIS BEACH CLUB originate in the city of Paris. Accordingly, the requisite goods/place association which is necessary for finding a mark is geographically deceptively misdescriptive or geographically deceptive is not present here.

*Id.* at 1062.

Applicant also relies on *In re Morinaga Nyugyo K.K.*, 120 USPQ2d 1738, 1748 (TTAB 2016), in which the Board found the applicant's mark MT. RAINIER THE MOUNTAIN OF SEATTLE ESPRESSO & MILK and Design[11] to be not primarily geographically deceptively misdescriptive of espresso beverages and espresso flavored sandwiches. The Board explained the rationale for its decision as follows:

> The Examining Attorney employs a narrow focus on the word SEATTLE, noting that SEATTLE is a known geographic location,

---



[11] The mark was shown as follows:

and that "[t]he additional elements in the mark do not detract from its primarily geographic significance."

\* \* \*

This is not to say that a geographic term in a compound mark cannot dominate the commercial impression of the mark in a way that renders the primary significance of the entire mark geographic. Each case is decided upon its own particular and unique set of facts. Nevertheless, this simply is not the case with the word SEATTLE in Applicant's mark. In Applicant's mark, the word SEATTLE … is part of the phrase THE MOUNTAIN OF SEATTLE, which appears … [with a design element and the] wording MT. RAINIER. Considering Applicant's mark as a whole — the way it would be seen by prospective purchasers of the goods — we cannot conclude that it is "primarily geographically deceptively misdescriptive." While there is no doubt that the term SEATTLE identifies a generally known geographic location, as it is used in the context of Applicant's mark, we do not find that the relevant public would consider it to indicate of the origin of the goods.

*Id.* at 1747-48.

The Examining Attorney places principal reliance on *In re Juleigh Jeans Sportswear Inc.*, 24 USPQ2d 1694, 1699-1700 (TTAB 1992), in which the mark LONDON LONDON (Stylized)[12] was held deceptive under Trademark Act Section 2(a) for clothing having no connection with London, given the renown of London as a center for contemporary as well as traditional fashions. In so holding, the Board noted the following:

[T]he Examining Attorney has established a prima facie case that the public would make a goods/place association in that, given the renown of London, England for both the latest as well as the more traditional styles of apparel and the influence of its fashion designers, the public would be likely to believe that the clothing for which applicant seeks registration of its mark originates in London.



[12] The mark was shown as follows:

* * *

> There is nothing … in the repetition of the term "LONDON" in a reversed, upside-down presentation which would slow, obscure or preclude recognition of the primary geographical significance of such term. If anything, separately repeating the term in the way applicant has done in its mark serves to reinforce the image of London as a trendy center of fashion.

Id. at 1698.

Another decision cited by Applicant and the Examining Attorney but not discussed in any detail is *In re Miracle Tuesday*. In *Miracle Tuesday*, the U.S. Court of Appeals for the Federal Circuit affirmed the Board's refusal to register the mark JPK PARIS 75 and Design ("Paris" disclaimed)[13] for "sunglasses, wallets, handbags and purses, travel bags, suitcases, belts, and shoes" under Trademark Act Section 2(e)(3). In that case, the applicant did not challenge the Board's finding that the primary significance of the mark is Paris. *In re Miracle Tuesday*, 104 USPQ2d at 1343. We add that the terms JPK and 75 as well as the design elements in that case did not detract from the primary meaning of the term PARIS as a known geographic location. In contrast, the addition of "REPUBLIC OF …" to the term LONDON forms a phrase which, as its primary meaning, conveys a fictitious or whimsical location. Since, as conceded by the Examining Attorney, REPUBLIC OF LONDON is fictitious, as a whole the primary significance of the mark is not a generally known geographic place or location.

---

[13] The mark was shown as follows: ᴾᴬᴿᴵˢ75. The letters "JPK" are the initials of Jean-Pierre Klifa, who was the manager of the applicant and designer of the applicant's goods.

Noting, as already stated, that each application must be considered on its own record, *In re Cordua Rests.*, 118 USPQ2d at 1635, we find that REPUBLIC OF LONDON, a fictitious place, when considered as a whole falls within the ambit of the *In re Sharky's Drygoods* and *In re Morinaga Nyugyo* line of decisions rather than the factual scenarios presented in the *In re Juleigh Jeans* and *In re Miracle Tuesday* line of decisions. Like the PARIS BEACH CLUB and MT. RAINIER THE MOUNTAIN OF SEATTLE ESPRESSO & MILK and Design marks considered in *In re Sharky's Drygoods* and *In re Morinaga Nyugyo*, the REPUBLIC OF LONDON mark contains additional textual matter taking the mark outside of the prohibition of Trademark Act Section 2(e)(3). In contrast, the LONDON LONDON (Stylized) and JPK PARIS 75 and Design marks considered in *In re Juleigh Jeans* and *In re Miracle Tuesday* did not contain additional literal elements that altered the deceptive (under Trademark Act Section 2(a)) or primarily geographically deceptively misdescriptive (under Trademark Act Section 2(e)(3)) nature of the marks as to the goods involved in those cases.

In the final analysis, as we noted above, the Examining Attorney submitted sufficient evidence that London is a generally known geographic place or location known for fashion and apparel manufacture. However, neither "LONDON" nor "the city of London" is the mark at issue. Rather, based on the evidence of record and the applicable authorities, REPUBLIC OF LONDON is a phrase referencing a fictitious place that does not exist, and the addition of "REPUBLIC OF" to "LONDON" shifts

the primary significance of the mark away from LONDON proper. Applicant's mark thus falls outside of the restrictions of Trademark Act Section 2(e)(3).

**B. The Other Elements used to consider whether Applicant's Mark is Primarily Geographically Deceptively Misdescriptive**

Because the evidence of record does not establish that the primary significance of the mark is a generally known geographic place or location, we need not and do not reach the other elements to determine whether the refusal was proper. *See In re Broken Arrow Beef and Provision, LLC*, 129 USPQ2d 1431, 1444 (TTAB 2019) (Because the record did not establish the threshold element of geographic descriptiveness, the Board did not reach the other elements of the refusal to register under Trademark Act Section 2(e)(2), 15 U.S.C. § 1052(e)(2); refusal reversed.).

## III. Conclusion

Based on the facts made of record, we find that Applicant's mark is not primarily geographically deceptively misdescriptive of the identified goods within the meaning of Trademark Act Section 2(e)(3). While REPUBLIC OF LONDON includes the geographic term "London," the primary significance of the mark as a whole is a fictitious place, the "Republic of London." Because Section 2(e)(3) requires the mark, as a whole, to be primarily geographically deceptively misdescriptive, REPUBLIC OF LONDON does not meet the first prong of this standard, namely, that the primary significance of the mark as a whole be a generally known geographic place.

## Decision

The refusal to register Applicant's REPUBLIC OF LONDON mark pursuant to Trademark Act Section 2(e)(3) is reversed.