THIS OPINION IS A
PRECEDENT OF THE TTAB

Mailed: January 24, 2022

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*In re Integra Biosciences Corp.*

————

Application Serial No. 87484450
Application Serial No. 87484519
Application Serial No. 87484584
Application Serial No. 87484617
Application Serial No. 87484658

————

Christopher R. Liro of Andrus Intellectual Property Law, LLP,
    for Integra Biosciences Corp.

Christopher M. Law, Trademark Examining Attorney, Law Office 103,
    Stacy Wahlberg, Managing Attorney.

————

Before Bergsman, Shaw and English,
    Administrative Trademark Judges.

Opinion by Bergsman, Administrative Trademark Judge:

Integra Biosciences Corp. ("Applicant") seeks registration on the Principal

Register of five different pastel colors (collectively "Pastel Tints")[1] for "disposable

---

[1] On February 8, 2021, the Board granted Applicant's motion to consolidate the appeals. Because each application presents the same issue and similar record, for judicial economy, we discuss the issues and record together and refer to the individual colors as the "Pastel Tints"; however, the determination of registrability is to each color individually.

pipette tips fitted with a customized mounting shaft,"[2] in International Class 9, filed under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), based upon Applicant's claim of first use anywhere and use in commerce since at least as early as October 1, 2007. Applicant filed all of the applications on June 12, 2017. We reproduce below the marks Applicant seeks to register as well as the specimens supporting the use of the marks:

**Serial No. 87484450 – Pastel Blue**



The description of the mark reads as follows:

---

[2] A pipette is "[a] narrow, usually calibrated tube into which small amounts of liquid are suctioned for transfer or measurement." AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (ahdictionary.com), accessed November 5, 2021. The Board may take judicial notice of dictionary definitions, including online dictionaries that exist in printed format. *See In re Cordua Rests. LP*, 110 USPQ2d 1227, 1229 n.4 (TTAB 2014), *aff'd*, 823 F.3d 594, 118 USPQ2d 1632 (Fed. Cir. 2016).

The mark consists of the color pastel blue, defined as Pantone number 550C, applied to the packaging for pipette tips, specifically on the rack inserts which are rectangular plastic trays having aligned rows and columns of vertical openings for holding an array of disposable pipette tips in a box or tub. The mark consists of the specifically claimed tint and hue of the color pastel blue alone. The broken lines in the drawing, which is the shape of the rack insert, indicate the position of the mark and do not form a part of the mark.

The color(s) pastel blue is/are claimed as a feature of the mark.

### Serial No. 87484519 – Pastel Green





The description of the mark reads as follows:

The mark consists of the color pastel green, defined as Pantone number 622C, applied to the packaging for pipette tips, specifically on the rack inserts which are rectangular

plastic trays having aligned rows and columns of vertical openings for holding an array of disposable pipette tips in a box or tub. The mark consists of the specifically claimed tint and hue of the color pastel green alone. The broken lines in the drawing, which is the shape of the rack insert, indicate the position of the mark and do not form a part of the mark.

The color(s) pastel green is/are claimed as a feature of the mark.

### Serial No. 87484584 – Pastel Orange





The description of the mark reads as follows:

The mark consists of the color pastel orange, defined as Pantone number 1565C, applied to the packaging for pipette tips, specifically on the rack inserts which are rectangular plastic trays having aligned rows and columns of vertical openings for holding an array of disposable pipette tips in a box or tub. The mark consists of the

specifically claimed tint and hue of the color pastel orange alone. The broken lines in the drawing, which is the shape of the rack insert, indicate the position of the mark and do not form a part of the mark.

The color(s) pastel orange is/are claimed as a feature of the mark.

**Serial No. 87484617 – Pastel Purple**



The description of the mark reads as follows:

The mark consists of the color pastel purple, defined as Pantone number 522C, applied to the packaging for pipette tips, specifically on the rack inserts which are rectangular plastic trays having aligned rows and columns of vertical openings for holding an array of disposable pipette tips in a box or tub. The mark consists of the specifically claimed tint and hue of the color pastel purple alone. The broken lines in the drawing, which is the shape of the rack insert,

indicate the position of the mark and do not form a part of the mark.

The color(s) pastel purple is/are claimed as a feature of the mark.

### Serial No. 87484658 – Pastel Yellow



The description of the mark reads as follows:

The mark consists of the color pastel yellow, defined as Pantone number 7403C, applied to the packaging for pipette tips, specifically on the rack inserts which are rectangular plastic trays having aligned rows and columns of vertical openings for holding an array of disposable pipette tips in a box or tub. The mark consists of the specifically claimed tint and hue of the color pastel yellow alone. The broken lines in the drawing, which is the shape of the rack insert, indicate the position of the mark and do not form a part of the mark.

> The color(s) pastel yellow is/are claimed as a feature of the mark.

The Examining Attorney refused to register all the applications on the two grounds listed below:

● The Pastel Tints are solely single colors applied to packaging for the goods and they are not inherently distinctive under Sections 1, 2, and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, and 1127, and have not acquired distinctiveness pursuant to Section 2(f) of the Trademark Act, 15 U.S.C. § 1052(f); and

● The Pastel Tints are functional under Section 2(e)(5) of the Trademark Act, 15 U.S.C. § 1052(e)(5).

In response to the refusal that the Pastel Tints are not inherently distinctive, Applicant seeks, in the alternative, to register the Pastel Tints under the provisions of Section 2(f) of the Trademark Act.

In its February 8, 2021 order, the Board consolidated the appeals. We refer to the record in application Serial No. 87484450 unless otherwise indicated. Citations to the prosecution record refer to the USPTO Trademark Status and Document Retrieval system (TSDR) in the downloadable .pdf format by page number. References to the briefs on appeal refer to the Board's TTABVUE docket system.

## I. Evidentiary Issue

Before proceeding to the merits of the refusals, we address an evidentiary matter. The Examining Attorney attached to his brief as exhibits materials previously submitted during prosecution. Because we associate the appeal brief with the application file, neither the Examining Attorney, nor Applicant, should resubmit

papers that are already in the application file as exhibits to the brief. TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 1203.01 (2021). *See also In re Info. Builders Inc.*, 2020 USPQ2d 10444, *1 n.4 (TTAB 2020) (attaching previously submitted evidence to an appeal brief is unnecessary and impedes efficient disposition of the appeal by the Board; direct citation to evidence in the record is strongly preferred); *In re Allegiance Staffing*, 115 USPQ2d 1319, 1323 (TTAB 2015) (practice of attaching to appeal brief copies of the same exhibits submitted with responses is discouraged); *In re Sela Prods. LLC*, 107 USPQ2d 1580, 1584 (TTAB 2013) ("It is of far more utility to the Board for the applicant and examining attorney to provide citations directly to the record and, when there are a large number of attachments to an Office action or response, to the specific page number where the attachment may be found.").

## II.  Background

Applicant contends that since 2007 it continuously and exclusively has been selling disposable pipette tips in pastel colored rack inserts.[3] Applicant further explains that each pastel color is used as part of a "color-coding scheme with pastel colors" to coordinate pipettes and pipette tips to ensure that customers use the proper tip on a specific pipette.[4] The pipettes include a tag that is colored to be an exact match to a given color-code for the size of the fitting on the pipette.[5] The color in each

---

[3] Harkins Decl. ¶4 attached to the July 23, 2019 Response to Office Action (TSDR 17). Jonathan Harkins is Applicant's Product Manager.

[4] Harkins Decl. ¶5 attached to the July 23, 2019 Response to Office Action (TSDR 17).

[5] Harkins Decl. ¶¶4-6 attached to the July 23, 2019 Response to Office Action (TSDR 17-18).

application represents a different size of pipette fitting.[6] We reproduce below a photograph of Applicant's pastel purple rack insert for Applicant's 12.5 µl (a µl is a microliter, one thousandth of a milliliter) disposable pipette tips, a manual pipette and an electronic pipette.[7] Both the manual and electronic pipette have a matching purple tag.



Using the proper pipette tip is critical for the pipette to work properly.[8] The color-coding ensures that customers use the proper pipette tips when working in a

---

[6] Harkins Decl. ¶5 attached to the July 23, 2019 Response to Office Action (TSDR 17).

[7] Harkins Decl. ¶18 and Exhibit 4 attached to the July 23, 2019 Response to Office Action (TSDR 20 and 38).

[8] Harkins Decl. ¶¶10 and 11 attached to the July 23, 2019 Response to Office Action (TSDR 19).

laboratory and for reordering specific-sized pipette tips.[9] An unsolicited customer review specifically noted, "I like that each pipette is a different color as if [sic] it is easy to choose which one I need and quickly."[10]

Applicant makes its pipette tips exclusively to fit Applicant's pipette fittings. Because Applicant's pipette fittings and pipette tips are covered by several U.S. patents, "[t]he ability to effectively use the pipette depends on using Applicant's pipette tips, and not the pipette tips made by another company."[11] Applicant's pipette tips will not fit on tip fittings manufactured by others, nor will pipette tips manufactured by others fit on Applicant's pipette fittings.[12] Applicant's declarant Jonathan Harkins testified as follows:

> It is common practice in the industry to sell pipette tips in rack inserts. Some companies use rack inserts with natural plastic color, but some tint or color the plastic. Most companies use color for decorative purposes. Following Applicant's lead, some companies use multiple colors for different size pipette tips to color code the sizes; however, the color schemes are different than [Applicant's] color scheme. The notion of using a matching color code system for pipettes and rack inserts has thus become familiar in the industry. Lab workers understand when using [Applicant's] pipettes that it is important that the rack insert be substantially an exact color match to ensure that the disposable tip(s) are produced by Applicant.[13]

---

[9] Harkins Decl. ¶10 attached to the July 23, 2019 Response to Office Action (TSDR 19).

[10] Harkins Decl. ¶38 and Exhibit 18 attached to the July 23, 2019 Response to Office Action (TSDR 25 and 78).

[11] Harkins Decl. ¶31 attached to the July 23, 2019 Response to Office Action (TSDR 23-24).

[12] Harkins Decl. ¶¶7 and 31 attached to the July 23, 2019 Response to Office Action (TSDR 18 and 23).

[13] Harkins Decl. ¶32 attached to the July 23, 2019 Response to Office Action (TSDR 24).

The evidence of record corroborates the general use in the industry of color-coding systems for pipette size. The Eppendorf website (eppendorf.com) pipetting ergonomics webpage discusses the purpose of color-coding.

> Is the color there to make a fashion statement?
>
> The standardized specific color code on the pipettes let(s) you quickly and easily identify volume class you need when selecting a pipette. Blue, for instance, indicates a pipette with a 1,000 µl volume class, yellow one with 100 µl. Most pipette suppliers now use color coding.
>
> Which tip fits my pipette?
>
> Reading the labels or check[ing] in the manual are some ways to figure out which tips fit the best to your pipette. But that takes a lot of time.
>
> When you work with different pipettes, you want to quickly and conveniently select the correct tip.
>
> The standardized color codes used on a pipette correspond to the color codes used for the tip and tip box tray. So, for example, the blue used to mark 100 – 1,000 µl pipettes will guide you to look for a blue box with 1,000 µl tips.
>
> Are the tip color codes unique?
>
> Standardized specific color codes of the tip boxes enable an easy and fast identification of the related tip volume class. The color code is independent from standard tips, filter tips, or low-retention tips.
>
> The colored tip trays let you easy [sic] recognize the volume even if the boxes are stored in a drawer and you can't see the whole box.[14]

---

[14] January 14, 2021 Office Action (TSDR 25-26).

However, the record does not show the pipette industry has adopted a standard color-coding system.[15] For instance, the CappAero pipette user guide provides the following information regarding its color code:[16]

**Volume setting**

All CappAero pipettes and volume controllers are colour coded. Please ensure that you always use controllers and pipettes with identical colour coding.

| | | |
|---|---|---|
| 0.2µl | – 2µl | Violet |
| 0.5µl | – 10µl | White |
| 2µl | – 20µl | Gray |
| 5µl | – 50µl | Red |
| 10µl | – 100µl | Orange |
| 20µl | – 200µl | Yellow |
| 30µl | – 300µl | Black |
| 100µl | – 1000µl | Blue |
| 1000µl | – 5000µl | Green |

Wikipedia.org corroborates the use of a color-coding system for pipette size but displays a different color-coding scheme.[17]

---

[15] Jonathan Harkins, Applicant's Product Manager, testified that other companies adopted different color coding systems after Applicant first introduced its color coding system Harkins Decl. ¶32 attached to the July 23, 2019 Response to Office Action (TSDR 24).

[16] January 14, 2021 Office Action (TSDR 30). Capp A/S, a Danish company, issued the CappAero user guide. Information originating from foreign sources that are accessible to the United States public (i.e., written in the English language or have an optional English-language version) may be relevant to discern United States consumer impression of a proposed mark. *In re Bayer AG*, 488 F.3d 960, 82 USPQ2d 1828, 1835 (Fed. Cir. 2007); *In re Well Living Lab Inc.*, 122 USPQ2d 1777, 1781 n.10 (TTAB 2017). "[I]t is reasonable to assume that professionals in medicine, engineering, computers, telecommunications and many other fields are likely to utilize all available resources, regardless of country of origin or medium." *In re Remacle*, 66 USPQ2d 1222, 1224 n.5 (TTAB 2002). Pipettes used in laboratories meet the criteria to allow us to consider information from foreign sources. Moreover, as to the functionality of color-coded pipettes/tips, the country of origin of the evidence demonstrating such functionality would seem immaterial.

[17] January 14, 2021 Office Action (TSDR 46).

| Commonly available pipette volumes | | | | |
|---|---|---|---|---|
| Name | Min. volume (µL) | Max. volume (µL) | Color on Gilson[clarification needed] | tip size (µL) |
| P2 | 0.2 | 2 | Orange | 10 |
| P10 | 1 | 10 | Red | 10 |
| P20 | 2 | 20 | Lemon | 200 |
| P100 | 20 | 100 | Salmon | 200 |
| P200 | 50 | 200 | Yellow | 200 |
| P1000 | 200 | 1000 | Blue | 1000 |
| P5000 | 500/1000 | 5000 | Purple | 5000 |
| P10000 | 1000 | 10000 | Sky | 10000 |

Applicant uses different colors for its color/size coding system as shown below:[18]

| Color | Size |
|---|---|
| Pastel purple | 12.5 µl |
| Pastel yellow | 125 µl |
| Pastel green | 300 µl |
| Pastel blue | 1250 µl |
| Pastel orange | 5000 µl |

Jonathan Harkins testified as follows:

> No other company uses the identified pastel colors used by [Applicant] on rack inserts for disposable pipette tips. While other companies may use colors, none use [Applicant's] pastel colors namely the approximate equivalent to Pantone Nos. 522C, 7403C, 622C, 550C, and 1565C.
>
> Since [Applicant's] pipettes have a matching tag, it is easy for a user to compare the color of [Applicant's] rack inserts in the lab, even against a rack insert with [a] different shade or hue. Relatively subtle differences in color are made easy to discern because of the color-matched tags on the pipettes. As mentioned, lab workers are taught to identify [Applicant's] pastel colors as the color of the rack insert identifying [Applicant] as the source of the pipette tips. [Applicant's] customers have come to expect a high level of quality, and the color coding serves as a symbol for

---

[18] Harkins Decl. ¶5 attached to the July 23, 2019 Response to Office Action (TSDR 17-18).

the high level of quality and the proper sizing that [Applicant's] customers expect.[19]

As noted above, "some companies use multiple colors for different size pipette tips to color code the sizes." In this regard, Applicant and the Examining Attorney submitted examples of such third-party pipette tip manufacturers. We reproduce below a photograph of the Rainin TerraRack "tinted, transparent rack inserts."[20]



We reproduce below a photograph of the Thermo Fisher Scientific insert racks.[21]



---

[19] Harkins Decl. ¶¶33-34 attached to the July 23, 2019 Response to Office Action (TSDR 24).

[20] Harkins Decl. ¶35 and Exhibit 13 attached to the July 23, 2019 Response to Office Action (TSDR 24 and 47).

[21] Harkins Decl. ¶¶36 and Exhibit 15 attached to the July 23, 2019 Response to Office Action (TSDR 25 and 53). *See also* December 2, 2019 Office Action (TSDR 6-7).

We reproduce below a photograph of the Thomas Scientific pipette insert racks.[22]



We reproduce below photographs of representative color-coded insert racks by Crystalgen.[23]



We reproduce below a photograph of the Sartorius insert racks.[24]



---

[22] December 2, 2019 Office Action (TSDR 17-18).

[23] December 2, 2019 Office Action (TSDR 31 and 33).

[24] December 2, 2019 Office Action (TSDR 13). The Sartorius website advertises, "The color coding of the tips trays enables you to easily find the matching color-coded Sartorius pipette." *Id.* at TSDR 9.

We reproduce below a photograph of the Gilson pipette kit.[25]



We reproduce below a photograph of Axygen Axypet Pro Pipettors MultiRack Tip System.[26]



The Biologix pipette tip webpage posted on the elabsaver.com website indicates that Biologix has a color-coding system to identify the different sizes of its pipette tips but does not display the colored inserts.[27] Similarly, the BrandTech Scientific, Inc. website (brandtech.com) advertises that its ULR pipette tips have a color-coding system for pipette size.[28]

---

[25] December 2, 2019 Office Action (TSDR 25).

[26] January 14, 2021 Office Action (TSDR 40).

[27] December 2, 2019 Office Action (TSDR 38).

[28] June 19, 2021 Office Action (TSDR 5-6).

Some pipette manufacturers use colored insert racks even if they do not have a color-coding system. For example,

● Cole-Parmer pipette tip box with blue rack for 1000 μl tips posted at masterflex.com.[29]



● Greiner Bio-One North America, Inc. Sapphire pipette rack for 1250 μl tips posted at shop.gbo.com/en/usa.[30]



● Microlit Pipette Tip Box for 20 μl posted on Amazon.com.[31]



---

[29] June 19, 2021 Office Action (TSDR 10).

[30] June 19, 2021 Office Action (TSDR 17).

[31] January 14, 2021 Office Action (TSDR 10).

### III. Are the colors of Applicant's pipette insert racks inherently distinctive?

At the outset, we must determine whether Applicant's color marks are applied to the product or the packaging, because that affects how we determine distinctiveness. Color can sometimes be inherently distinctive on product packaging, but it can never be inherently distinctive on a product itself. *See, e.g.*, *In re Forney Indus.*, 955 F.3d 940, 2020 USPQ2d 10310, at *3-5 (Fed. Cir. 2020). We find that Applicant uses the Pastel Tints on product packaging, not on the "disposable pipette tips fitted with a customized mounting shaft" themselves. The drawings of the purported marks clearly depict the Pastel Tints applied to the rack inserts.[32] The description of the marks provide that the Pastel Tints are "applied to the packaging for pipette tips, specifically on the rack inserts which are rectangular plastic trays having aligned rows and columns of vertical openings for holding an array of disposable pipette tips in a box or tub." The supporting specimens of use also clearly depict the Pastel Tints applied to the packing inserts.[33] Thus, there is no inconsistency between the drawings and the specimens. *See In re Thrifty, Inc.,* 274 F.3d 1349, 61 USPQ2d 1121, 1123 (Fed. Cir. 2001). Throughout their briefs, both Applicant and the Examining Attorney refer to Applicant as applying pastel tints to product packaging. We agree.

---

[32] *See* Trademark Rule 2.52(a), 37 C.F.R. § 2.52(a) ("[A] drawing depicts the mark sought to be registered.").

[33] A trademark application for registration under Section 1(a) of the Trademark Act, 15 U.S.C. § 1051(a), must include one specimen showing the mark as actually used in commerce on or in connection with the identified goods. Section 1(a)(1) of the Trademark Act, 15 U.S.C. § 1051(a)(1); Trademark Rules 2.34(a)(1)(iv) and 2.56(a)-(b), 37 C.F.R. §§ 2.34(a)(1)(iv) and 2.56(a)-(b).

Consumers usually perceive color, whether a single overall color, or multiple colors applied in a specific and arbitrary fashion, as an ornamental feature of the goods. *See In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ2d 417, 422 (Fed. Cir. 1985); *In re Hudson News Co.*, 39 USPQ2d 1915, 1923 (TTAB 1996) ("[B]lue motif" used in retail stores would likely be perceived by prospective purchasers as "nothing more than interior decoration" that "could be found in any number of retail establishments. Undoubtedly such features are usually perceived as interior decoration or ornamentation."), *aff'd per curiam*, 114 F.3d 1207 (Fed. Cir. 1997). However, color can function as a mark if a manufacturer uses it in the manner of a trademark and the purchasing public perceives the color as identifying and distinguishing the goods on or in connection with which the manufacturer uses color. The Supreme Court has held that sometimes color alone may meet the basic legal requirements for a trademark and when it does, there is no rule that prevents color from serving as a mark. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 34 USPQ2d 1161, 1162 (1995) (green-gold color as applied to an ironing board press pad).

"[C]olor marks can be inherently distinctive when used on product packaging, depending upon the character of the color design." *In re Forney Indus.*, 2020 USPQ2d 10310, at *3. Thus, color when used on product packaging may be "inherently distinctive if '[its] intrinsic nature serves to identify a particular source.'" *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 54 USPQ2d 1065, 1068 (2000) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 23 USPQ2d 1081, 1083 (1992)).

"While it is true that 'color is usually perceived as ornamentation,' *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 227 USPQ2d 417, 422 (Fed. Cir. 1985), a distinct color-based product packaging mark can indicate the source of the goods to a consumer, and, therefore, can be inherently distinctive." *Forney Indus.*, 2020 USPQ2d 10310, at *3-4. In other words, the focus of our inquiry for each color is whether consumers will rely on the single color applied to the packaging inserts holding the pipette tips to differentiate Applicant's pipette tips from the pipette tips manufactured by others. *In re Procter & Gamble Co.*, 105 USPQ2d 1119, at *7 (TTAB 2012) (citing *Tone Bros. Inc. v. Sysco Corp.*, 28 F.3d 1192, 31 USPQ2d 1321, 1331 (Fed. Cir. 1994); *Paddington Corp. v. Attiki Imps. & Distribs., Inc.*, 996 F.2d 577, 27 USPQ2d 1189, 1192-93 (2d Cir. 1993)).

In determining the inherent distinctiveness of product packaging as trade dress, the issue is whether the trade dress "makes such an impression on consumers that they will assume" the trade dress is associated with a particular source. *Forney Indus.*, 2020 USPQ2d 10310, at *6 (citing *Seabrook Foods, Inc. v. Bar-Well Foods Ltd.*, 568 F.2d 1342, 196 USPQ2d 289, 291 (CCPA 1977)). To assess that question, the Board must look to the following *Seabrook Foods* factors:

(1) Whether the trade dress is a "common" basic shape or design;

(2) Whether it is unique or unusual in the particular field;

(3) Whether it is a mere refinement of a commonly-adopted and well-known form of ornamentation for a particular class of goods viewed by the public as a dress or ornamentation for the goods; or,

(4) Whether it is capable of creating a commercial impression distinct from the accompanying words.

*Id.* The *Seabrook Foods* factors assist in determining whether it is reasonable to infer that customers in the relevant market will perceive the trade dress as an indicator of origin. *Forney Indus.*, 2020 USPQ2d 10310, at \*6.

Based on the evidence discussed above, it is common practice for manufacturers of pipettes and pipette tips to use matching colors on pipette insert racks and pipette fittings to facilitate users' ability to associate a pipette tip of a particular size with the correct pipette fitting. Applicant's product manager attested that "lab workers are taught to identify [Applicant's] pastel colors as the color of the rack insert identifying [Applicant] as the source of the pipette tips,"[34] not that they inherently recognize the pastel colors as identifying a single source. Applicant's use of different colors on its pipette insert racks to identify pipette tip sizes is a common design or practice that is not unique or unusual in the field. Applicant's use of Pastel Tints for its pipette insert racks is simply a refinement of this commonly adopted practice. Accordingly, consumers will not perceive the pastel colors as trademarks and, therefore, the Pastel Tints are not inherently distinctive.[35]

While acknowledging "[o]ther manufacturers use other shades of color either as trademarks ornamentation and/or for color coding," Applicant contends that its "use

---

[34] Harkins Decl. ¶¶33 attached to the July 23, 2019 Response to Office Action (TSDR 24).

[35] Obviously, we disagree with Applicant's contention that its use of pastel tints meets the *Seabrook Foods* test. Applicant's Brief, pp. 13-14 (7 TTABVUE 14-15).

of the specific and unique pastel tints" makes its marks inherently distinctive,[36] in part, because Applicant exclusively uses those Pastel Tints.[37] In addition, Applicant asserts that its evidence shows consumers recognize Pastel Tints as distinctive of Applicant's pipette tips.[38] The only evidence of consumer recognition or perception is the unsolicited customer review discussed above noting, "I like that each pipette is a different color as if [sic] it is easy to choose which one I need and quickly."[39] The reviewer refers to the functional aspect of the colors as part of a color coding system but does not refer to Pastel Tints pointing to Applicant as the source.

In further support of the above-noted arguments, Applicant refers to the Harkins declaration.[40] Jonathan Harkins explains how "using the proper pipette tips(s) from [Applicant] is critical for the pipette to work as designed."[41] Accordingly, Applicant trains lab workers to match the tag on the pipette with the color on the rack insert "to ensure the proper pipette tips are being mounted on to the pipette."[42]

> The color coding is immediately evident to customers once the customer is told about it. The color coding is important to ensure that customers use the proper [Applicant] pipette tips when working in the laboratory, and also to ensure

---

[36] Applicant's Brief, p. 11 (7 TTABVUE 12).

[37] *Id.*

[38] Applicant's Brief, p. 12 (7 TTABVUE 13).

[39] Harkins Decl. ¶38 and Exhibit 18 attached to the July 23, 2019 Response to Office Action (TSDR 25 and 78).

[40] Harkins Decl. ¶¶9-14, 32, 34, 37, and 38 attached to the July 23, 2019 Office Action (TSDR 18-20 and 24-15).

[41] Harkins Decl. ¶11 attached to the July 23, 2019 Response to Office Action (TSDR 19).

[42] Harkins Decl. ¶9 attached to the July 23, 2019 Response to Office Action (TSDR 18).

> that proper [Applicant] pipette tips are ordered when new ones are needed.[43]
>
> ⸻
>
> The color coding has worked very well for [Applicant's] customers. I am not aware of any users of [Applicant's] pipettes that do not understand that pipette tips from a rack with a matching insert needs to be used and purchased in order for the pipette to work properly.[44]

In other words, Applicant developed its own color-coding system to ensure the efficient use of its products (i.e., to ensure that the correct tip is used with a corresponding pipette). Although, as noted earlier, Harkin also averred that Applicant's customers "are taught to identify [Applicant's] pastel colors as the color of the rack insert identifying [Applicant] as the source of the pipette tips," this represents efforts to attain acquired distinctiveness. It is not evidence of inherent distinctiveness.

Applicant further argues that rather than determine whether the Pastel Tints are inherently distinctive at the time of final decision, we must determine whether Applicant's Pastel Tints are inherently distinctive as of Applicant's first use of those colors in connection with its insert rack packaging for its pipette tips, or at least as of the filing date of its applications, because Applicant was the first to use colors for the products.[45]

> If any other manufacturers copied any of Integra's pastel colors after Integra filed its applications, that cannot

---

[43] Harkins Decl. ¶10 attached to the July 23, 2019 Response to Office Action (TSDR 19).

[44] Harkins Decl. ¶14 attached to the July 23, 2019 Response to Office Action (TSDR 20).

[45] Applicant's Brief, p. 13 (7 TTABVUE 14).

> undermine the inherent distinction of the color marks or their eligibility for registration.[46]

We render our decisions in ex parte appeals based on the evidentiary record established at the time we make our final decision. *See In re Air Filters, Inc.*, 183 USPQ 767, 768 (TTAB 1974) ("[R]egistrability of a mark must be determined on the basis of facts as they exist at the time when the issue of registrability is under consideration.") (quoting *In re Thunderbird Prods. Corp.*, 406 F.2d 1389, 160 USPQ 730, 733 (CCPA 1969) (quoting *McCormick & Co. v. Summers*, 354 F.2d 668, 148 USPQ 272, 2760 (CCPA 1966))). *See also M/S R.M. Dhariwal (HUF) 100% EOU v. Sarda King Ltd.*, 2019 USPQ2d 149090, at \*6 (TTAB 2019) (the Board considers the factual situation at the time of trial). *Cf. Grote Indus., Inc. v. Truck-Lite Co.*, 126 USPQ2d 1197, 1211 (TTAB 2018) ("[T]he proper timeframe to assess acquired distinctiveness is at the time of trial."), *appeal docketed*, No. 1:18cv-00599 (W.D.N.Y. May 24, 2018); *Hornby v. TJX Corp.*, 87 USPQ2d 1411, 1416 (TTAB 2008) (likelihood of confusion determined based on the facts at time of trial). *Compare Consorzio del Prosciutto di Parma v. Parma Sausage Prods. Inc.*, 23 USPQ2d 1894, 1898 (TTAB 1992) (with respect to a Section 2(a) geographic deceptiveness claim, the Board determines the extent of petitioner's fame or reputation as of the time respondent's registration issued).

Applicant contends that the purpose of Pastel Tints is not ornamentation but source identification.[47] Simply put, Applicant's intent that Pastel Tints function as

---

[46] *Id.*

[47] Applicant's Brief, p. 13 (7 TTABVUE 14).

its trademarks does not make it so. "Mere intent that a term function as a trademark is not enough in and of itself, any more than attachment of the trademark symbol would be, to make a term a trademark." *In re Remington Prods. Inc.*, 3 USPQ2d 1714, 1715 (TTAB 1987). *See also Seabrook Foods*, 196 USPQ at 291-92 ("Seabrook contends that it 'intentionally selected this mark because its distinctiveness would enable the design to distinguish its products from those of others.' However, regardless of Seabrook's intentions, it is the association, by the consumer, of the 'oval' design with Seabrook as the source that is determinative."); *Apollo Med. Extrusion Techs., Inc. v. Med. Extrusion Techs., Inc.*, 123 USPQ2d 1844, 1855 (TTAB 2017); *In re Vertex Grp. LLC*, 89 USPQ2d 1694, 1701 (TTAB 2009) ("[M]ere intent that a word, name, symbol or device function as a trademark or service mark is not enough in and of itself."); *In re Morganroth*, 208 USPQ 284, 287 (TTAB 1980) ("Wishing does not make a trademark or service mark be."). Where, as here, the evidence shows that the relevant public does not perceive the Pastel Tints by their very nature as serving to indicate the source of the identified goods, they are not inherently distinctive.

We find the Pastel Tints are not inherently distinctive.

## IV.   Have the Pastel Tints acquired distinctiveness?

Because the Pastel Tints are not inherently distinctive, Applicant must prove that they have acquired distinctiveness to obtain registration on the Principal Register. *See Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 940 F.2d 1572, 6 USPQ2d 1001, 1007-08 (Fed. Cir. 1988); *In re Florists' Transworld Delivery Inc.*, 106 USPQ2d 1784, 1792

(TTAB 2013). We weigh six interrelated factors to determine whether a proposed mark has acquired secondary meaning:

(1) Association with a particular source by actual purchasers (typically measured by customer surveys);

(2) Length, degree, and exclusivity of use;

(3) Amount and manner of advertising;

(4) Amount of sales and number of customers;

(5) Intentional copying; and

(6) Unsolicited media coverage of the product embodying the mark.

*Converse, Inc. v. ITC*, 909 F.3d 1110, 128 USPQ2d 1538, 1546 (Fed. Cir. 2018).

"By their nature color marks carry a difficult burden in demonstrating distinctiveness and trademark character." *Owens-Corning*, 227 USPQ at 424. *See also Saint-Gobain Corp. v. 3M Co.*, 90 USPQ2d 1425, 1434 (TTAB 2007). Accordingly, the burden Applicant bears to establish that the Pastel Tints have acquired distinctiveness is a heavy one.[48]

In support of its claim of acquired distinctiveness, Applicant submitted two declarations from Jonathan Harkins, Applicant's Product Manager, who attested to the following facts:

---

[48] While Applicant has a heavy burden in proving the Pastel Tints have acquired distinctiveness, we agree with Applicant that the USPTO may not place an unduly heavy burden on Applicant. Applicant's Brief, p. 15 (7 TTABVUE 16). For example, in *Owens-Corning*, even though the applicant submitted overwhelming evidence of acquired distinctiveness, the Board held the evidence was not convincing. On appeal, the Federal Circuit concluded "the Board placed an inappropriately heavy evidentiary burden on [Owens-Corning]." The court reversed the Board because based on the totality of the evidence it found the color pink had acquired distinctiveness. *Owens-Corning*, 227 USPQ at 424-25.

● Applicant has used continuously and exclusively the Pastel Tints on its pipette tip insert racks since 2007;[49]

● Applicant's color coding system comprising the use of pastel tints to color the insert racks ensures that customers use the proper pipette tips and that customers reorder Applicant's pipette tips;[50]

● "[T]he color for the respective [Applicant] pipette tips is conspicuous on a label viewable from outside of the packaging to help avoid mistakes.";[51]

● Applicant's color coding system has worked very well;[52]

● There are no reported instances of any customers confusing Applicant's pipette tips sold in a pastel tinted insert rack with a competitor's pipette tips;[53]

● "Following Applicant's lead, some companies use multiple colors for different sized pipette tips to color code the sizes; however, the color schemes are different than [Applicant's] color scheme.";[54]

● "No other company uses the identified pastel colors used by [Applicant] on rack inserts for disposable pipette tips.";[55]

---

[49] Harkins Decl. ¶4 attached to the July 23, 2019 Response to Office Action (TSDR 17).

[50] Harkins Decl. ¶10 attached to the July 23, 2019 Response to Office Action (TSDR 19).

[51] Harkins Decl. ¶13 attached to the July 23, 2019 Response to Office Action (TSDR 19).

[52] Harkins Decl. ¶14 attached to the July 23, 2019 Response to Office Action (TSDR 20).

[53] Harkins Decl. ¶15 attached to the July 23, 2019 Response to Office Action (TSDR 20).

[54] Harkins Decl. ¶32 attached to the July 23, 2019 Response to Office Action (TSDR 24).

[55] Harkins Decl. ¶33 attached to the July 23, 2019 Response to Office Action (TSDR 24).

● "[L]ab workers are taught to identify [Applicant's] pastel colors as the color of the rack insert identifying [Applicant] as the source of the pipette tips.";[56] and

● As of December 10, 2020, Applicant has sold 1,565,685,130 pipette tips using the Pastel Tints on the insert racks.[57]

## A. Association with a particular source by actual purchasers

Applicant did not submit any evidence from purchasers. As noted above, the only evidence of consumer association is the unsolicited customer review noting, "I like that each pipette is a different color as if [sic] it is easy to choose which one I need and quickly."[58] The reviewer refers to the functional aspect of the colors as part of a color coding system, but does not refer to Applicant's Pastel Tints as indicating source.

## B. Length, degree, and exclusivity of use

Applicant claims it has continuously and exclusively used Pastel Tints on its pipette tip insert racks since 2007.[59] Long use of a mark in commerce is one relevant factor to consider in determining whether a mark has acquired distinctiveness. *See In re Uncle Sam Chem. Co.*, 229 USPQ 233, 235 (TTAB 1986) (finding § 2(f) claim of acquired distinctiveness of SPRAYZON for "cleaning preparations and degreasers for industrial and institutional use" persuasive where applicant had submitted

---

[56] Harkins Decl. ¶34 attached to the July 23, 2019 Response to Office Action (TSDR 24).

[57] Harkins Decl. ¶3 attached to the December 21, 2020 Response to Office Action (TSDR 13).

[58] Harkins Decl. ¶38 and Exhibit 18 attached to the July 23, 2019 Response to Office Action (TSDR 25 and 78).

[59] Harkins Decl. ¶4 attached to the July 23, 2019 Response to Office Action (TSDR 17).

declaration of its president supporting sales figures and attesting to over eighteen years of substantially exclusive and continuous use); *In re Packaging Specialists, Inc.*, 221 USPQ 917, 920 (TTAB 1984) (finding evidence submitted by applicant insufficient to establish acquired distinctiveness of PACKAGING SPECIALISTS, INC., for contract packaging services, notwithstanding, *inter alia*, continuous and substantially exclusive use for sixteen years, deemed "a substantial period but not necessarily conclusive or persuasive.").

On one hand, as noted above, Applicant is just one of several manufacturers of pipette tips that use a color coding system, including use of color on product packaging insert racks. On the other hand, Applicant is the only manufacturer using the Pastel Tints.

## C. Amount and manner of advertising

Applicant submitted an excerpt from its website, reproduced below, featuring the pastel blue and green insert racks.[60]

---

[60] December 21, 2017 Response to Office Action (TSDR 7 and 11).



## Parts and numbers

### ⌄ GRIPTIPS FOR 96-CHANNEL PIPETTING HEADS
Reinforced racks and refills (300 µl and 1250 µl)

### GRIPTIPS IN RACKS
The tip racks are reinforced to guarantee proper loading of the GripTips.

| TIP SIZE | COLOR CODE | DESCRIPTION | STERILE FILTER | STERILE | NON-STERILE |
|---|---|---|---|---|---|
| 300 µl | Green | 5 racks of 96 tips | 6435 | 6434 | 6433 |
| 1250 µl | Blue | 5 racks of 96 tips | 6445 | 6444 | 6443 |

GripTips in racks to use with 96-channel pipeting heads

### GREEN CHOICE REFILLS
The GREEN CHOICE is a environmentally friendly packaging of GripTips. Each GREEN CHOICE contains five GripTip inserts of non-sterile GripTips to refill the current tip racks.

| TIP SIZE | COLOR CODE | DESCRIPTION | NON-STERILE |
|---|---|---|---|
| 300 µl | Green | 5 inserts of 96 tips | 6432 |
| 1250 µl | Blue | 5 inserts of 96 tips | 6442 |

Ask          Demo          Quote          Buy

The website features a photograph of two containers, one with a pastel blue insert rack and one with a pastel green insert rack inside the containers. The text on the webpage identifies green and blue as color codes. The containers each have a label displaying the INTEGRA word mark. There is no "look for" advertising calling a consumer's attention to the color of the insert rack as a means to identify the source. *See In re Becton, Dickinson & Co.*, 675 F.3d 1368, 102 USPQ2d 1372, 1376 (Fed. Cir.

2012) (applicant characterizes its advertisement as "look for advertising – the kind that pulls out of an overall article a few features to catch the viewer's attention."); *Kohler Co. v. Honda Giken Kogyo K.K.*, 125 USPQ2d 1468, 1517 (TTAB 2017) ("'Look for' advertising refers to advertising that directs the potential consumer in no uncertain terms to look for a certain feature to know that it is from that source. It does not refer to advertising that simply includes a picture of the product or touts a feature in a non-source identifying manner.") (internal quotation marks omitted). Consumers will tend to perceive INTEGRA as the only trademark displayed on this webpage.

Applicant did not submit any evidence regarding its advertising expenditures related to the Pastel Tints, if any, the extent of its advertising, or exemplars of any such advertising, other than the above-noted webpage.

### D.   Amount of sales and number of customers

From 2007 through December 10, 2020, Applicant sold 1,565,685,130 pipette tips using the Pastel Tints on the insert racks.[61] While a billion of anything is a big number, Applicant failed to provide any context for this quantity of sales. For example, Applicant did not provide any testimony or evidence regarding its market share, its number of customers, or how many pipette tips an average laboratory (if there is such a thing as an average laboratory) may use in a day, a week, a month, or a year. *See In re Boston Beer Co.*, 198 F.3d 1370, 1371 (Fed. Cir. 1999) (even where

---

[61] Harkins Decl. ¶3 attached to the December 21, 2020 Response to Office Action (TSDR 13).

there was evidence of "annual advertising expenditures in excess of ten million dollars and annual sales under the mark of approximately eighty-five million dollars," the Court held, "considering the highly descriptive nature of the proposed mark, [the applicant] has not met its burden to show that the proposed mark has acquired secondary meaning.").

In addition, Applicant tints the insert racks holding the pipette tips; it does not tint the pipette tips themselves. Thus, the crucial fact is how many tinted insert racks are in circulation, not how many pipette tips Applicant has sold. We simply do not have enough information to extrapolate what the sale of a billion and a half pipette tips over thirteen years means vis-à-vis the acquired distinctiveness of pastel tinted insert racks.

### E.   Intentional copying

While Applicant is just one of many pipette tip manufacturers that use a color coding system, it claims that "[n]o other company uses the identified pastel colors used by [Applicant] on rack inserts for disposable pipette tips."[62] Applicant emphasizes that it has "exclusively used pastel colored rack inserts in the packaging of disposable pipette tips."[63] Applicant implies it was the first to use color rack inserts and subsequently others followed its lead, but use different colors. Thus, others may

---

[62] Harkins Decl. ¶33 attached to the July 23, 2019 Response to Office Action (TSDR 24).

[63] Harkins Decl. ¶4 attached to the July 23, 2019 Response to Office Action (TSDR 17). *See also* Applicant's Brief, p. 4 (7 TTABVUE 5) ("Applicant has exclusively used certain specific pastel tints of blue, green orange, purple, and yellow to color rack inserts in the packaging of disposable pipette tips.").

have copied the concept of using colors on rack inserts, but they did not copy, and are not using, the colors Applicant uses and claims as its marks.

**F.    Unsolicited media coverage of the product embodying the mark**

Applicant did not submit any evidence of media coverage of its pipette insert racks or pipette tips.

**G.    Conclusion**

At best, Applicant's evidence demonstrates the commercial success of Applicant's pipette tips, but not that relevant consumers view the Pastel Tints of its insert racks as trademarks for those goods. Here, the raw numbers alone (length of use and number of pipette tips sold) are insufficient to meet the heavy burden to establish that consumers recognize Applicant's use of the Pastel Tints on insert racks as trademarks. *See, e.g.*, *Florists' Transworld Delivery*, 106 USPQ2d at 1783-94 (finding evidence insufficient to establish secondary meaning in color black); *In re Ferris Corp.*, 59 USPQ2d 1587, 1592 (TTAB 2001) (finding evidence insufficient to establish secondary meaning in color pink).

We find the Pastel Tints have not acquired distinctiveness as trademarks for Applicant's products and, therefore, we affirm the refusal to register the applications under Sections 1, 2, and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, and 1127, on the ground that the Pastel Tints are not inherently distinctive and they have not acquired distinctiveness.

## V. Are the pastel tints applied to product packaging insert racks functional?

Section 2(e)(5) of the Trademark Act, 15 U.S.C. § 1052(e)(5), provides that registration of a mark may be denied if it "comprises any matter that, as a whole, is functional." A mark described as product packaging is functional if it is (1) "essential to the use or purpose of the article," or if it (2) "affects the cost or quality of the article." *TrafFix Devices Inc. v. Mktg. Displays Inc.*, 532 U.S. 23, 58 USPQ2d 1001, 1006 (2001) (quoting *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 214 USPQ 1, 4 n.10 (1982)); *In re Mars, Inc.*, 105 USPQ2d 1859, 1861 (TTAB 2013).

The Supreme Court has made it clear that if the application record establishes functionality under *Inwood*, such as where a patent's disclosures show that the color applied to product packaging for pipette tips is one of a number of superior ways to perform a function, further inquiry into other categories of evidence listed in *In re Morton-Norwich Prods., Inc.*, 671 F.2d 1332, 213 USPQ 9, 15-16 (CCPA 1982), such as the availability of alternatives and cost information, is not necessary.[64] *Cf. TrafFix Devices*, 58 USPQ2d at 1006 ("Where the design is functional under the *Inwood*

---

[64] The *Morton-Norwich* factors include:

(1) the existence of a utility patent that discloses the utilitarian advantages of the subject matter sought to be registered;

(2) advertising by the applicant that touts the utilitarian advantages of the subject matter;

(3) facts pertaining to the availability of alternative designs; and

(4) (facts pertaining to whether the subject matter results from a comparatively simple or inexpensive method of manufacture.

213 USPQ at 15-16.

formulation there is no need to proceed further to consider if there is a competitive necessity for the feature.").

Considering whether the Pastel Tints are "essential to the use or purpose of the article," the declaration of Jonathan Harkins, Applicant's Product Manager, establishes that the Pastel Tints enable users to identify and distinguish the size of one pipette tip from another so that they place the appropriate tip on the pipette. Mr. Harkins attested to the following facts:

● "[Applicant] has used a color coding scheme with pastel colors to identify pipettes and disposable pipette tips that it sells, and to ensure that customers use the proper pipette tips on the respective pipettes."[65]

● Applicant filed the five trademark applications listed below:

> Serial No. 87484617 for a pastel purple rack insert for the 12.5 μl pipette tip;

> Serial No. 87484658 for a pastel yellow rack insert for the 125 μl pipette tip;

> Serial No. 87484519 for a pastel green rack insert for the 300 μl pipette tip;

> Serial No. 87484450 for a pastel blue rack insert for the 1250 μl pipette tip; and

> Serial No. 87484584 for a pastel orange rack insert for the 5000 μl pipette tip.[66]

---

[65] Harkins Decl. ¶5 attached to the July 23, 2019 Response to an Office Action (TSDR 17).

[66] *Id.* at TSDR 17-18.

● "The pastel color coding has been and continues to be used by [Applicant] to help its customers use and purchase the appropriate pipette tips from [Applicant]."[67]

● "Each of these pipettes is offered in a variety of sizes (volume ranges), and each size (volume range) has one or more tip fittings sized and configured for pipette tips associated with a given color code. The pipettes include a tag that is colored to be an exact match to a given color code for the size of the fitting(s) on the pipette."[68]

● "The tip racks with the pastel inserts are used in the laboratory, once the packaging is opened, to support the pipette tips for mounting on the fittings of a pipette."[69]

● "An important part of training new customers is teaching the lab workers to compare the color of the tag on the pipette to the color of the rack insert holding the pipettes in order to ensure that the proper pipette tips are being mounted on to the pipette."[70]

● "The respective pastel color [is] in fact an exact match to the tag on the respective pipette, serves both to indicate that the pipette tips are manufactured by [Applicant], and also that the pipette tips have the proper configuration and size to fit on the fitting(s) on the pipette."[71]

---

[67] *Id.* at TSDR 18.

[68] *Id.* at ¶6 (TSDR 18).

[69] *Id.* at ¶8 (TSDR 18).

[70] *Id.* at ¶9 (TSDR 18).

[71] *Id.*

● "The color coding is immediately evident to customers once the customer is told about it. The color coding is important to ensure that customers use the proper [Applicant] pipette tips when working in the laboratory, and also to ensure the proper [Applicant] pipette tips are ordered when new ones are needed."[72]

● "[Applicant's] Operating Instructions also instruct the customer that using the proper pipette tip(s) from [Applicant] is critical for the pipette to work as designed."[73]

● "Pipette tips are sold in racks with color coded inserts. Replacement pipette tips are also sold in the color-coded insert without the tub, and in a bag for loading into the color-coded insert at the lab. In all cases, the color for the respective [Applicant's] pipette tips is conspicuous on the label viewable from outside the packaging to help avoid mistakes."[74]

● "The color coding has worked very well for our customers. I am not aware of any users of our pipettes that do not understand that pipette tips from a rack with a matching insert needs to be used and purchased in order for the pipette to work properly."[75]

● "Following Applicant's lead, some companies use multiple colors for different sized pipette tips to color code the sizes; however, the color schemes are different than [Applicant's] color scheme. The notion of using a matching color code system for pipette and rack inserts has thus become familiar in the industry. Lab workers

---

[72] *Id.* at ¶10 (TSDR 19).

[73] *Id.* at ¶11 (TSDR 19).

[74] *Id.* at ¶13 (TSDR 19).

[75] *Id.* at ¶14 (TSDR 20).

understand with using [Applicant's] pipettes that it is important that the rack insert be substantially an exact color match to ensure that the disposable tip[s] are produced by Applicant."[76]

● "Since [Applicant's] pipettes have a matching tag, it is easy for a user to compare the color of [Applicant's] rack inserts in the lab, even against a rack insert with a different shade or hue. Relatively subtle differences in color are made easy to discern because of the color-matched tags on the pipettes. As mentioned, lab workers are taught to identify [Applicant's] pastel colors as the color of the rack insert identifying [Applicant] as the source of the pipette tips. [Applicant's] customers have come to expect a high level of quality, and the color coding serves as a symbol for the high level of quality and the proper sizing that [Applicant's] customers expect."[77]

The unsolicited customer review discussed above noted how the Pastel Tints are essential to the use of the pipettes. The reviewer stated the following:

> These pipettes are very ergonomic and comfortable to use. It is simple to change volume and I like that each is a different color as if [sic] it is easy to choose which one I need and quickly.[78]

The facts in these appeals are similar to the facts in *Kasco Corp. v. Southern Saw Serv. Inc.*, 27 USPQ2d 1501 (TTAB 1993), where Southern Saw Service owned a registration for "a green colored wrapper disposed around [band saw blades for the meat cutting industry]." *Id.* at 1502. In analyzing petitioner's functionality claim, the

---

[76] *Id.* at ¶32 (TSDR 24).

[77] *Id.* at ¶34 (TSDR 24).

[78] *Id.* at ¶38, Exhibit 18 (TSDR 25 and 78).

Board noted that Southern Saw Service's advertising material pointed out that its blades are "sealed in moisture-proof paper that is colored-keyed and labeled for easy identification of blade-type and size." *Id.* at 1505. In addition, Southern Saw Service's witness testified:

> Southern Saw and its wholly owned subsidiary Atlanta Saw utilize at least five additional colors besides green to color-code their saw blade wrappers red, orange, yellow, blue and silver. Indeed, Mr. Sievers conceded that he selected the colors for the wrappers of Southern Saw's blades based upon the "appropriateness" of the color for the type of blade inside the wrapper.

*Id.*

The Board in *Kasco* observed:

> Moreover, the record in [*Kasco Corp. v. Southern Saw Serv. Inc.*] also establishes that competitors of Southern Saw namely Kasco and its predecessors have, since at least 1976, likewise used various colored wrappers to enable purchasers and users to quickly distinguish one blade type from another.

*Id.*

Accordingly, the Board found that Southern Saw Service's colored wrappers, including the green color wrapper at issue, "serve to enable purchasers and users of the blades to quickly identify and distinguish one blade type from another. Thus, the various colored wrappers have a functional or utilitarian purpose." *Id.* (citing *Spraying Sys. v. Delavan Inc.*, 762 F. Supp. 772, 19 USPQ2d 1121, 1128 (N.D. Ill. 1991) ("Color coding as an *identification system* is clearly functional....")). *See also Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 2021 USPQ2d 195 (2d Cir. 2021) (the use of the colors yellow, teal, blue, pink, purple, brown, and white on

mixing tips is functional, as the colors signify diameter and enable users to more easily match a cartridge to the appropriate mixing tip), *petition for cert. filed*, No. 21-417 (Sept. 16, 2021).[79]

While Applicant concedes that the Pastel Tints "are undeniably part of a color coding scheme," it maintains that registration of the Pastel Tints will not negatively affect competition inasmuch as there are alternatives available to competitors. In fact, as discussed above, competitors use other color coding systems to identify their pipettes and pipette tips.[80] Applicant argues:

> There is no anti-competitive effect to affording trademark protection to these specific pastel colors because other manufacturers are free to (and do) use *other* colors—or non-color indicators—as source identifiers and/or as part of their own coding schemes. (July 23, 2019 Office Action Response, App. No. 87/484,450 TSDR p. 18 (2019 Harkins Decl. ¶¶ 32, 33).) In other words, affording protection to [Applicant's] pastel color marks does not at all limit competitor's use of their own color schemes or own color marks. Here the pastel tints are arbitrary, and there is nothing about the pastel tints *themselves* that is functional, in contrast to, for example, the color black on boat engines or bright orange or similar "warning" colors.[81]

However, Applicant does not refute that the Pastel Tints ensure that customers use the proper pipette tips on the respective pipettes and that the proper pipette tips are ordered when new ones are needed and, thus, are essential to the use of the

---

[79] In *Sulzer Mixpac,* the court of appeals found the evidence "firmly establishes that the colors signify diameter, which in turn assists users with selecting the proper cartridge for their needs. As Mixpac's own employees acknowledge, the colors enable users to quickly match the proper mixing tip with the proper cartridge, and thereby 'improve[] the operation of the goods.'" 2021 USPQ2d 195, at *7.

[80] Applicant's Brief, pp. 17-24 (7 TTABVUE 18-25).

[81] *Id.* at p. 20 (7 TTABVUE 21).

pipette tips. Where the subject matter is functional under the *Inwood* formulation (when the feature is essential to the use or purpose of the product or when it affects the cost or quality of the product), as it is here, there is no need to consider competitive necessity. *TrafFix Devices*, 58 USPQ2d at 1006.

We affirm the refusal to register the applications under Section 2(e)(5) of the Trademark Act, 15 U.S.C. § 1052(e)(5), on the ground that the Pastel Tints are functional.

**Decision:** We affirm the refusal to register the applications under Sections 1, 2, and 45 of the Trademark Act, 15 U.S.C. §§ 1051, 1052, and 1127, on the ground that the Pastel Tints are not inherently distinctive and they have not acquired distinctiveness.

We affirm the refusal to register the applications under Section 2(e)(5) of the Trademark Act, 15 U.S.C. § 1052(e)(5), on the ground that the Pastel Tints are functional.