# United States Court of Appeals for the Federal Circuit

---

**IN RE: ERIK BRUNETTI,**

*Appellant*

---

2023-1539

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 88308426, 88308434, 88308451, 88310900.

---

Decided: August 26, 2025

---

JOHN R. SOMMER, John R. Sommer, Attorney-at-Law, Villa Park, CA, argued for appellant. Also represented by KELLY KRISTINE PFEIFFER.

BRADLEY HINSHELWOOD, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC, argued for appellee Coke Morgan Stewart. Also represented by BRIAN M. BOYNTON, DANIEL TENNY; AMY J. NELSON, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA.

---

Before LOURIE, DYK, and REYNA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* LOURIE.

DYK, *Circuit Judge.*

Erik Brunetti appeals a decision of the Trademark Trial and Appeal Board ("Board"). The Board affirmed the examining attorney's refusal to register the word FUCK as a trademark for certain goods and services because it failed to function as a trademark. *In re Brunetti*, No. 88308426, 2022 WL 3644733 (T.T.A.B. Aug. 22, 2022). We reject many of Mr. Brunetti's arguments but nonetheless conclude that the decision of the Board lacks sufficient clarity, and, accordingly, we vacate and remand for further proceedings.

BACKGROUND

In February 2019, Mr. Brunetti filed four intent-to-use trademark registration applications. He sought registration on the principal register of the standard character mark FUCK (the "proposed mark" or the "applied-for mark") for (1) goods including sunglasses and carrying cases for cell phones, laptops, and glasses;[1] jewelry, watches, and related products;[2] backpacks, wallets, luggage, and other bags;[3] and (2) services including retail store services featuring the aforementioned goods and a wide variety of other consumer goods.[4] S. App'x 1–2.[5]

---

[1]    Application Serial No. 88308426 for goods in International Class 9.

[2]    Application Serial No. 88308434 for goods in International Class 14.

[3]    Application Serial No. 88308451 for goods in International Class 18.

[4]    Application Serial No. 88310900 for services in International Class 35.

[5]    Citations to "S. App'x" refer to the supplemental appendix filed by the government with its Response Brief.

After issuing non-final refusals and receiving responses from Mr. Brunetti,[6] the United States Patent and Trademark Office ("PTO") examining attorney refused the trademark applications on the ground that "the applied-for mark is a slogan or term that does not function as a trademark or service mark to indicate the source of applicant's goods and/or services and to identify and distinguish them from others."  S. App'x 191; *accord* S. App'x 2048, 2641, 3113.[7]  The examining attorney refused the applications under the heading "Refusal under Trademark Act Sections 1, 2, 3, and 45—Widely-used Commonplace Wording." *Id.*  In relation to the jewelry and related goods application, for example, the examining attorney explained "the applied-for mark is a commonplace term, message, or expression widely used by a variety of sources that merely conveys an ordinary, familiar, well-recognized concept or sentiment." *Id.*  The examining attorney "attached evidence from multiple internet websites and internet based periodicals [to] show[] that the term FUCK is commonly used as a versatile expression that conveys a wide range of emotion, from disdain to joy."   S. App'x 192; *see*

---

[6]   The applications were initially refused on the ground that the proposed mark "[c]onsists of or comprises immoral[] . . . or scandalous matter."  15 U.S.C. § 1052(a). The Supreme Court subsequently held, in a separate case involving Mr. Brunetti, that section 1052(a)'s bar on registering immoral or scandalous matter was unconstitutional. *Iancu v. Brunetti*, 588 U.S. 388, 390 (2019).  The examining attorney then reexamined the applications, leading to the decisions under review here.

[7]   The record and legal issues applicable to each application are substantively similar.  The Board thus primarily referred to Mr. Brunetti's application for jewelry, watches, and related property, S. App'x 4 n.6, and we follow suit.

S. App'x 195–382 (attached evidence).   The evidence included images of jewelry and other goods with no connection to Mr. Brunetti marketed on websites.   *See, e.g.*, S. App'x 289–339.

On August 22, 2022, the Board in a precedential opinion affirmed the refusals to register the proposed mark for failure to function as a mark.   The Board concluded that "[m]ere commonality[] . . . is not the test" for a failure to function refusal but, instead, the Board "must assess whether Applicant's proposed mark, [FUCK], functions as a mark based on whether the relevant public, i.e. purchasers or potential purchasers of the identified [] goods and [] services . . . would perceive [FUCK] as identifying the source or origin of such goods and services."   S. App'x 36 (quoting *In re Team Jesus LLC*, 2020 U.S.P.Q.2d 11489, 2020 WL 7312021, at *3 (T.T.A.B. 2020)) (alterations in original).   But the Board explained that "[m]atter may be merely informational and fail to function as a trademark if it is a common term or phrase that consumers of the goods or services identified in the application are accustomed to seeing used by various sources to convey ordinary, familiar, or generally understood concepts or sentiments." S. App'x 12.   "[T]here are designations, including certain widely-used messages, which are inherently incapable of being regarded as source indicators."   S. App'x 34–35. "Such widely used messages will be understood as merely conveying the ordinary concept or sentiment normally associated with them, rather than serving any source-indicating function." S. App'x 12.

The Board then considered the ubiquity of the applied-for mark, explaining that "FUCK is no ordinary word, but rather one that has acquired a multitude of recognized meanings . . . , and whose popularity has soared over the years" such that it is "arguably one of the most expressive words in the English language—an 'all-purpose word.'" S. App'x 38–39. Next, the Board considered the applied-for mark's use in the marketplace, explaining that

"[p]rominent use of an applied-for-mark, as shown in the examples of record, 'is probative in determining whether a term or phrase would be perceived in the marketplace as a trademark or as a widely used message.'" S. App'x 44 (citing *In re Mayweather Promotions, LLC*, 2020 U.S.P.Q.2d 11298, 2020 WL 6689736, at *5 (T.T.A.B. 2020)). The Board concluded that:

> The record before us establishes that the word FUCK expresses well-recognized familiar sentiments and the relevant consumers are accustomed to seeing it in widespread use, by many different sources, on the kind of goods identified in the [applications at issue]. Consequently, we find that it does not create the commercial impression of a source indicator, and does not function as a trademark to distinguish Applicant's goods and services in commerce and indicate their source.

S. App'x 46. Accordingly, the Board affirmed the refusals to register. S. App'x 58.

Mr. Brunetti appealed. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(B).

## DISCUSSION

We review the Board's decision in accordance with the standards of the Administrative Procedure Act ("APA"). *Bridgestone/Firestone Rsch., Inc. v. Auto. Club De L'Quest De La France*, 245 F.3d 1359, 1361 (Fed. Cir. 2001) (citing *Dickinson v. Zurko*, 527 U.S. 150, 152 (1999)). We evaluate the Board's legal conclusions de novo. *In re HOTELS.COM, L.P.*, 573 F.3d 1300, 1302 (Fed. Cir. 2009). We uphold the Board's factual findings unless they are arbitrary, capricious, an abuse of discretion, or unsupported by substantial evidence. *Id.* "The [APA] . . . establishes a scheme of 'reasoned decisionmaking,'" which requires that "the process by which [an agency] reaches [a] result must be logical and rational." *Allentown Mack Sales & Serv.,*

*Inc. v. NLRB*, 522 U.S. 359, 372 (1998) (quoting *Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 52 (1983) ("*State Farm*")).

We reject most of Mr. Brunetti's arguments but conclude that the Board has failed to articulate a satisfactory explanation for its action.

I

We begin by considering Mr. Brunetti's arguments that the Board violated various constitutional rights and that the Supreme Court's decision in *Iancu v. Brunetti*, 588 U.S. 388 (2019), dictates the outcome of this case. We find these arguments unpersuasive.

First, Mr. Brunetti argues that the PTO has violated the First Amendment by engaging in viewpoint discrimination because it has allowed trademark registration of "positive terms," such as FUCK CANCER and LOVE, while refusing registration of "negative terms" or "profanity," such as the applied-for mark. Appellant's Br. 52–53 (citing *Iancu v. Brunetti*, 588 U.S. 388 (2019); *Matal v. Tam*, 582 U.S. 218 (2017)). The Board explained that the focus of a failure-to-function refusal is "whether the relevant consumers perceive [the applied-for mark] as a trademark" and that such a "refusal applies evenhandedly, regardless of any viewpoint expressed." S. App'x 51. Mr. Brunetti has identified no basis for concluding that the Board's analysis in this case deviated from that viewpoint-neutral principle.

Second, Mr. Brunetti argues that the PTO is retaliating against him for exercising his "right to petition" the courts for redress. Appellant's Br. 53–55. Mr. Brunetti appears to be referring to his prior case addressed by the Supreme Court in *Iancu v. Brunetti*, 588 U.S. 388 (2019), where Mr. Brunetti prevailed and the Supreme Court held that the PTO had erred in declining to register the mark FUCT on the ground that it was "immoral or scandalous" within the meaning of 15 U.S.C. § 1052(a). *Brunetti,*

588 U.S. at 390 (holding that section 1052(a) bar to registration of "immoral[ ] or scandalous" trademarks violated the First Amendment). Mr. Brunetti's sole evidence of retaliation is that the refusals in this case came after his Supreme Court victory. We conclude Mr. Brunetti has failed to show the Board's decision in this case is retaliatory.

Third, Mr. Brunetti appears to argue that *Iancu v. Brunetti* dictates the outcome of this case. We disagree. *Iancu v. Brunetti* addressed a different legal issue (the constitutionality of a prohibition on scandalous words) than is present in this case (failure to function as a mark). 588 U.S. at 390. It also addressed a fundamentally different mark (FUCT as compared to FUCK). The applied-for mark in this case is a well-defined and widely used word. FUCT, on the other hand, is not a word at all; it is wordplay on its "phonetic twin[,] . . . 'fucked,'" *In re Brunetti*, 877 F.3d 1330, 1338 (Fed. Cir. 2017), *aff'd sub nom. Iancu v. Brunetti*, 588 U.S. 388 (2019). *Iancu v. Brunetti* thus did not answer the question in this case: whether the Board erred in determining the applied-for mark fails to function as a trademark. Additionally, Mr. Brunetti's successful registration of the FUCT mark, *see* U.S. Trademark Registration No. 6230977 (registered Dec. 29, 2020), does not guarantee him the ability to register a separate and fundamentally different mark.

II

Mr. Brunetti next appears to argue that, in affirming the examining attorney's refusals, the Board improperly created an "entirely novel" failure-to-function doctrine "wherein there are some words or phrases that just can never be registered for any goods or services because the terms are allegedly 'too widely-used.'" Appellant's Br. 6–7 (emphases omitted).

A

The registrability of a trademark is governed by the Lanham Act. *See* 15 U.S.C. §§ 1051, 1052. By definition, a "trademark" must indicate a product's source:

> The term "trademark" includes any word, name, symbol, or device, or any combination thereof—(1) used by a person, or (2) which a person has a bona fide intention to use in commerce . . . , to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.

15 U.S.C. § 1127. It is thus "a threshold requirement of registrability that [an applied-for] mark 'identify and distinguish' the goods and services of the applicant from those of others, as well as 'indicate the source' of those goods and services." *In re GO & Assocs., LLC*, 90 F.4th 1354, 1356 (Fed. Cir. 2024) (quoting 15 U.S.C. § 1127); *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146 (2023) ("[A] trademark is not a trademark unless it identifies a product's source (this is a Nike) and distinguishes that source from others (not any other sneaker brand).").

To distinguish one producer's goods or services from another's, and thus be a registerable trademark, a proposed mark must be "distinctive," either inherently or through the acquisition of secondary meaning. 1 J. Thomas McCarthy, *McCarthy on Trademarks & Unfair Competition* § 4:13 (5th ed.) ("McCarthy"). "Distinctiveness is often expressed on an increasing scale: Word marks 'may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful.'" *United States Pat. & Trademark Off. v. Booking.com B.V.*, 591 U.S. 549, 553 (2020) (quoting *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)). "A mark that is, for example, generic or descriptive, fails to function as a source identifier, though descriptive marks can be registered if they have acquired

secondary meaning in the perception of consumers." *In re Vox Populi Registry Ltd.*, 25 F.4th 1348, 1351 (Fed. Cir. 2022) (citations omitted).[8]

But "the source identifier requirement is broader than just whether a proposed mark is generic or descriptive." *Vox*, 25 F.4th at 1351. The Supreme Court and our court have recognized that a claimed mark that does not serve as a source identifier cannot be registered under the Lanham Act. *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 162–64 (1995) ("It is the source-distinguishing ability of a mark . . . that permits it to serve the[] basic purposes [of trademark law]."); *GO*, 90 F.4th at 1356 ("If the nature of a proposed mark would not be perceived by consumers as identifying the source of a good or service, it is not registrable."); *Vox*, 25 F.4th at 1350–51 ("[T]he source identifier and descriptiveness inquiries are 'complementary and opposite sides of the same coin to the extent that a mark . . . is "merely descriptive" of the goods.'" (quoting *In re Cooper*, 254 F.2d 611, 613 (CCPA 1958)). It is thus well-established that an applied-for mark that does not serve as a source identifier fails to function as a trademark and should be refused federal trademark registration.

The source-identifier inquiry "typically focuses on how the mark is used in the marketplace and how it is perceived

---

[8] "To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 851 n.11 (1982). The Supreme Court has explained that a mark that otherwise fails to indicate a source may become source-identifying by attaining secondary meaning. *See, e.g.*, *Qualitex*, 514 U.S. at 166 (explaining that a color alone can "distinguish[] a firm's goods and identif[y]" if it develops secondary meaning).

by consumers." *GO*, 90 F.4th at 1356. Whether or not a proposed mark functions as a source identifier is a question of fact that we review for substantial evidence. *Id.* at 1357. At least as an initial matter, the examining attorney bears the burden to establish a prima facie case of failure to function. S. App'x 40–41.[9]

B

Mr. Brunetti argues that the Board misconstrued the failure-to-function doctrine in holding that marks cannot be registered if they are "widely-used commonplace terms." Appellant's Br. 25. Neither the examining attorney nor the Board made such a holding.

The examining attorney explained that the basis for the refusals was that "the applied-for mark [was] a slogan or term that [did] not function as a trademark or service mark to indicate the source of applicant's goods and/or services and to identify and distinguish them from others." S. App'x 116; *accord* S. App'x 191, 1552. The Board's affirmance similarly was based on the applied-for mark's failure to distinguish the goods and services of the user from those of others, i.e., its failure to function as a trademark.

---

[9]    The Board explained that "[t]he Examining Attorney is required to establish a reasonable predicate for his position—i.e., a prima facie case—that FUCK is not registrable" and, after the examining attorney made such a showing, Mr. Brunetti was required to rebut it by "com[ing] forth with competent evidence that consumers would perceive the proposed mark as a source identifier." S. App'x 40–41. Neither party here disputes that the examining attorney had the initial burden to establish a prima facie case of failure to function. Because we conclude the Board erred in assessing the examining attorney's prima facie case, we do not address the correctness of the Board's burden-shifting framework.

*See, e.g.*, S. App'x 28–29, 63–64. The Board made clear that "commonality . . . is not the test" for determining whether an applied-for mark functions as a trademark. S. App'x 36; *see also* S. App'x 45 n.79.

This is correct under our caselaw—the fact that a mark is a commonplace word is itself not a ground for refusing registration. Courts have repeatedly explained that arbitrary or suggestive marks consisting of only a commonplace word or phrase, such as CAMEL for cigarettes, can be inherently distinctive and thus registered on the principal register.[10] *See, e.g.*, *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209–11 (2000) (noting inherent distinctiveness of "arbitrary" marks such as "Camel" cigarettes). The Board's decision appropriately acknowledged that the "commonality" of a word or phrase alone cannot form the basis of a refusal to register an applied-for mark. *See* S. App'x 36; S. App'x 45 n.79.

Mr. Brunetti also suggests that the Board's decision cannot be sustained under the informational matter doctrine. The Board's failure-to-function analysis in this case is similar to, but not identical to, an informational matter refusal. The Board has held that "[s]logans and other terms that are considered to be merely informational in nature[] . . . are not registrable." *In re Eagle Crest, Inc.*,

---

[10]   Arbitrary word marks are "words in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services," such as "APPLE for computers and other electronic goods" and "SHELL for gasoline." 1 McCarthy § 11:11. "Marks[] . . . that are "'arbitrary' ("Camel" cigarettes), "fanciful" ("Kodak" film), or "suggestive" ("Tide" laundry detergent)'[] may be placed on the principal trademark register because they are 'inherently distinctive.'" *Booking.com*, 591 U.S. at 553 (quoting *Wal-Mart*, 529 U.S. at 210–11).

96 U.S.P.Q.2d 1227, 2010 WL 3441109, at \*2 (T.T.A.B. 2010). But in those cases, the proposed marks conveyed recognized information.[11] In affirming the refusals here, the Board relied on its determination that the applied-for mark "is arguably one of the most expressive words in the English language" and that it is used "to convey a wide[] range of recognized concepts and sentiments." S. App'x 39. Unlike the proposed marks refused as merely informational matter, the applied-for mark in this case does not convey a single idea or a complete piece of information, nor did the Board analyze it as such.

---

[11] *See Eagle Crest*, 2010 WL 3441109, at \*5 (refusing registration of ONCE A MARINE, ALWAYS A MARINE for clothing because "[t]he primary function of this familiar Marine slogan . . . is[] to express support, admiration, or affiliation with the Marines"); *D.C. One Wholesaler, Inc. v. Chien*, 120 U.S.P.Q.2d 1710, 2016 WL 7010638, at \*7 (T.T.A.B. 2016) (refusing registration of I ♥ DC for bags, clothing, and plush toys "[b]ecause the nature of the phrase will be perceived as informational[] and . . . because the ubiquity of the phrase . . . has given it a significance as an expression of enthusiasm"); *In re Volvo Cars of N. Am., Inc.*, 46 U.S.P.Q.2d 1455, 1998 WL 239298, at \*5 (T.T.A.B. 1998) (refusing registration of DRIVE SAFELY for cars and car parts because the phrase "would be regarded simply as a familiar safety admonition, particularly when used in connection with automobiles"); Trademark Manual of Examining Procedure (July 2022) § 1202.04(b) (precluding from trademark protection "informational matter," such as slogans, terms, and phrases used by the public to convey familiar sentiments, because consumers are unlikely to "perceive the matter as a trademark or service mark for any goods and services").

## III

The broad spectrum of marks about which the Board is concerned here is clear enough.  The Board focused on the applied-for mark's use as an "all-purpose word." S. App'x 38–39 (citation omitted); *see also id.* ("FUCK is no ordinary word, but rather one that has acquired a multitude of recognized meanings since its first recorded use[] . . . .").  We refer to such words with many meanings as "all-purpose word marks."  We see no error in the Board's fact determination that the record demonstrates the "the ubiquity of the term FUCK as an expression to convey a wide[] range of recognized concepts and sentiments."  S. App'x 39.

But Mr. Brunetti argues that the Board erred by allowing the registration of some all-purpose word marks while inexplicably denying registration of others, including registrations for the word FUCK, without any explanation as to the difference.  For example, Mr. Brunetti argues that the PTO has registered other marks consisting only of a ubiquitous word that has a variety of meanings, such as LOVE, and that "all of the 100 most common words in English are registered."  Appellant's Br. 14–16 (emphasis omitted); *see also*, *e.g.*, U.S. Trademark Registration No. 2191439 (LOVE in standard characters registered for "fresh fruit and vegetables" on September 22, 1998).  In fact, he argues that the applied-for mark, FUCK in standard characters, has been registered by a third party for goods in International Class 28, "[s]now globes; [t]oy snow globes," U.S. Trademark Registration No. 6172195 (registered Oct. 13, 2020), and then by another party for goods in International Class 30, "[g]ummy candies," U.S.

14                                                    IN RE: BRUNETTI

Trademark Registration No. 7344225 (registered Apr. 2, 2024), after the Board's decision in this case was published.[12]

On appeal, the PTO does not dispute the existence of these registrations. It admits that "the [PTO] has registered other marks including FUCK or other common words," Appellee's Br. 15, but argues that our cases have consistently recognized that the PTO need not reconcile all past cases with the case under consideration. *Id.* at 30–31.

We have recognized that a decision of the Board may not be challenged on the ground that examining attorneys in other cases may have made erroneous rulings. *See, e.g.*, *In re Cordua Rests., Inc.*, 823 F.3d 594, 600 (Fed. Cir. 2016); *In re Nett Designs*, 236 F.3d 1339, 1342 (Fed. Cir. 2001).[13]  Understanding the basis and scope of this

---

[12]    To the extent the registered trademarks referenced in this opinion are not part of the record on appeal, we take judicial notice of them under Fed. R. Evid. 201(c). We have determined that the registration documents by the PTO "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2); *see In re Chippendales USA, Inc.*, 622 F.3d 1346, 1356 (Fed. Cir. 2010).

[13]    *See also, e.g.*, *In re Shinnecock Smoke Shop,* 571 F.3d 1171, 1174 (Fed. Cir. 2009) (determining that "[a]pplicant's allegations regarding similar marks" were "irrelevant" because "[e]ven if all of the third-party registrations should have been refused registration under section 1052(a), such errors d[id] not bind the USPTO to improperly register Applicant's marks"); *In re Boulevard Ent., Inc.*, 334 F.3d 1336, 1343 (Fed. Cir. 2003) ("The fact that, whether because of administrative error or otherwise, some marks have been registered even though they may be in violation of the governing statutory standard does not

principle requires some understanding of the structure of PTO trademark examination. In 2022, there were over 700 examining attorneys charged with addressing trademark registration applications. *See* U.S. Patent & Trademark Office, Fiscal Year 2022 Agency Financial Report 20 ("2022 Financial Report"). If the examining attorney issues a final decision refusing registration of the application, appeal is available to the Board, 15 U.S.C. § 1070, which is comprised of administrative trademark judges and certain other high-level PTO officers, *id.* § 1067(b). The Board issues precedential decisions (such as the decision here), which are binding on the Board, and nonprecedential decisions, which are not binding.

Our decisions recognize that, through examiner error, some marks are granted that should not have been granted, making it impossible to require the PTO to assure consistency among all examining attorney decisions. We have explained that "[t]he PTO is required to examine all trademark applications for compliance with each and every eligibility requirement, . . . even if the PTO earlier mistakenly registered a similar or identical mark suffering the same defect." *Cordua*, 823 F.3d at 600; *see also Nett*, 236 F.3d at 1342 ("Even if some prior registrations had some characteristics similar to [the application], the PTO's allowance of such prior registrations does not bind the Board or this court."). To that end, we have explained that "[e]ach application for registration must be considered on its own merits." *In re Merrill Lynch, Pierce, Fenner, & Smith, Inc.*, 828 F.2d 1567, 1569 (Fed. Cir. 1987); *accord Nett*, 236 F.3d at 1342; *In re Owens-Corning Fiberglas Corp.*, 774 F.2d 1116, 1127 (Fed. Cir. 1985); *In re Loew's*

---

mean that the agency must forgo applying that standard in all other cases."), *abrogated on other grounds by In re Tam*, 808 F.3d 1321 (Fed. Cir. 2015) (en banc).

*Theatres, Inc.*, 769 F.2d 764, 769 (Fed. Cir.1985).[14] This does not mean that the Board need not take account of prevailing practice. The Supreme Court recently in *Booking.com* explained that the PTO must consider its "own past practice" in developing a "comprehensive rule." 591 U.S. at 558.

Nor does this mean that the Board has no obligation to develop coherent and rational rules for the guidance of examining attorneys and the Board in other proceedings. Like other agencies, the Board "must examine the relevant

---

[14] Although Mr. Brunetti argues the PTO's registration decisions at the examining attorney level have been inconsistent, there is no contention here that the Board's action in this case is inconsistent with prior Board decisions. We note that even with respect to Board decisions, the Board has broad authority to distinguish past cases. As in the patent area, "not every instance of an agency reaching inconsistent outcomes in similar, related cases will necessarily be erroneous." *Vicor Corp. v. SynQor, Inc.*, 869 F.3d 1309, 1322 (Fed. Cir. 2017). However, when the Board reaches inconsistent decisions in almost identical situations, remand is required. *See id.* (remanding where the Patent Trial and Appeal Board ("PTAB") rendered inconsistent decisions "on the same technical issue between the same parties on the same record"); *see also Novartis AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1325 (Fed. Cir. 2017) (explaining that the relevant APA provisions were satisfied where PTAB's discussion of prior art reference in a final written decision "was not inconsistent with its review of [the reference]" in an earlier decision); *Local 814, Int'l Bhd. of Teamsters v. NLRB*, 512 F.2d 564, 567 (D.C. Cir. 1975) (remanding two decisions of the National Labor Relations Board that were "factually similar and ostensibly inconsistent" because the Board "ha[d] not explained its reasons for reaching different results").

data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *State Farm*, 463 U.S. at 43 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

In addition, to enable us in our role of judicial review, the Board must make "sufficient findings and reasoning to permit meaningful appellate scrutiny"—a requirement that applies with equal force to issues of law and issues of fact. *Gechter v. Davidson*, 116 F.3d 1454, 1458 (Fed. Cir. 1997) (vacating decision of the Board of Patent Appeals and Interferences); *Nazomi Commc'ns, Inc. v. Arm Holdings, PLC*, 403 F.3d 1364, 1371 (Fed. Cir. 2005); *see also Princeton Vanguard, LLC v. Frito-Lay N. Am., Inc.*, 786 F.3d 960, 970 (Fed. Cir. 2015) (explaining that judicial review under the substantial evidence standard "can only take place when the agency explains its decisions with sufficient precision, including the underlying factfindings and the agency's rationale" (quoting *Packard Press, Inc. v. Hewlett–Packard Co.*, 227 F.3d 1352, 1357 (Fed. Cir. 2000))); *SEC v. Chenery Corp.*, 318 U.S. 80, 94 (1943) ("[T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted [be] clearly disclosed and adequately sustained."); *Allentown Mack*, 522 U.S. at 374 ("[A]djudication is subject to the requirement of reasoned decisionmaking . . . .").

For all these reasons, the Board must provide rational guidance that is sufficiently explained. *See, e.g.*, *State Farm*, 463 U.S. at 43. That guidance is missing here. The Board consistently dismissed Mr. Brunetti's reliance on other registered marks by explaining that "the cited third-party registrations for other single word marks, perceived in a vacuum without any contextual information, are not relevant to our determination of whether FUCK functions as a mark for the applied[-]for goods and services."

S. App'x 36.[15]   But the Board did not explain what such contextual information might be.  The Board also contemplated that Mr. Brunetti could "come forward with competent evidence that consumers would perceive the proposed mark as a source identifier" to rebut the examining attorney's prima facie showing.  S. App'x 41.  Again, the Board did not indicate what that evidence would be.  The Board determined that Mr. Brunetti failed to meet a standard, but it did not articulate what that standard would be.  In other words, the Board's decision is unclear as to the circumstances under which all-purpose word marks can be registered and which are "inherently incapable of being regarded as [a] source indicator[]."  S. App'x 34–35.

The Board's reasoning in this case suggests that the Board has concluded that it need not articulate a viable registration standard.  The apparent inconsistency of past examining attorneys' decisions with respect to the registration of all-purpose word marks is itself strong evidence of the failure to articulate coherent rules and engage in reasoned decisionmaking.

The Board's reasoning sounds in fact very much as though it has taken an "I know it when I see it" approach to failure-to-function refusals.  Such an approach is inconsistent with the Board's mandate to engage in reasoned decisionmaking under the APA.  *Pearson v. Shalala*, 164 F.3d 650, 660–61 (D.C. Cir. 1999) (holding invalid FDA's interpretation of regulation where FDA took "I know it when I see it" approach to the term "significant scientific

---

[15]   *See also* S. App'x 55 ("The third-party registrations of different marks are of little probative value in this case, which must be decided on its own particular facts and circumstances." (citation omitted)); Appellee's Br. 29 (admitting that "the Board's analysis here does not necessarily preclude registration of the mark for different goods or services or based on other factual records").

agreement"); *Stanojkova v. Holder,* 645 F.3d 943, 949 (7th Cir. 2011), *as amended* (Aug. 16, 2011) (explaining that "I know it when I see it" approach of the Board of Immigration Appeals resulted in "capricious adjudication"); *see also In re Scheer,* 819 F.3d 1206, 1210 (9th Cir. 2016) ("It is fair to say that the 'I know it when I see it approach' of [a prior precedent] has led to predictably unpredictable results.").[16]

We note that in concluding that the examining attorney established a prima facie case that consumers would not perceive the applied-for mark as indicating the source of the applied-for goods and services, the Board relied in part on the fact that the applied-for mark has been used by

---

[16]    To be sure, our own decisions have provided some limited but incomplete guidance. We have explained that marks containing informational matter may be registerable so long as they are <u>also</u> source-identifying by conveying matter that is associated with a particular source of goods and services. *GO*, 90 F.4th at 1358. In *GO*, we recognized that many "widely used slogans" are valid marks because they serve dual functions, both conveying information and indicating source. *Id.* (providing as examples Donald Trump's MAKE AMERICA GREAT AGAIN, Nike's JUST DO IT, DeBeers' A DIAMOND IS FOREVER, and Verizon's CAN YOU HEAR ME NOW?).

We have also suggested that the stylization of a mark and its placement on marked goods or in advertisements for services may impact its ability to operate as a source identifier. In *Vox*, we explained that "[d]esign or stylization may make an otherwise unregistrable mark registrable if the features 'create an impression on the purchasers separate and apart from the impression made by the words themselves.'" 25 F.4th at 1353 (quoting *Cordua,* 823 F.3d at 606); *see also* 1 McCarthy § 3:4.

other entities in the past on commercial listings for goods falling within the claimed categories.  *See* S. App'x 18–26. As the Board explained, the "record in this case demonstrates that a variety of sources prominently display the term FUCK on a wide range of consumer merchandise and household items, including the kinds of goods identified in [Mr. Brunetti's] Applications . . . ."    S. App'x 44.    The Board's reliance on this factor—prior third-party use of the applied-for mark for the applied-for goods or services in the marketplace—was appropriate under our caselaw.  *See GO*, 90 F.4th at 1357 (concluding that "the Board properly considered both [the applicant's] uses and third-party uses when assessing how the public would likely perceive the [applied-for] mark").  It was also proper for the Board to consider that Mr. Brunetti could not "appropriate the term exclusively . . . , denying others the ability to use [the applied-for mark] freely."  S. App'x 46.

But the Board's reliance on third-party use does not create a coherent standard.  We conclude the Board failed to provide sufficient precision in its rationale for why some commonplace words can serve as a mark, but others, such as FUCK, cannot.  The Board's lack of clarity in this regard is especially troubling given the increasing number of failure-to-function refusals in recent years.[17]    Without a clearer explanation, we are unable to determine whether

---

[17]    *See, e.g.*, Theodore H. Davis Jr. & John L. Welch, *United States Annual Review: The Seventy-Fifth Year of Administration of the Lanham Act of 1946*, 113 Trademark Rep. 1, 7 (2023) (describing "inexorable expansion" of "the frontiers of the failure-to-function ground for refusal"); Lucas Daniel Cuatrecasas, *Failure to Function and Trademark Law's Outermost Bound*, 96 N.Y.U. L. Rev. 1312, 1325 (2021) ("[T]he TTAB has been churning out an increasing number of failure-to-function decisions."); *id.* at 1326 (graph showing growth).

substantial evidence supports the Board's determination that the applied-for mark fails to function as a source identifier. Accordingly, remand is required. *See, e.g.*, *Princeton Vanguard*, 786 F.3d at 970–71.

## CONCLUSION

We have considered Mr. Brunetti's remaining arguments and find them unpersuasive. We vacate the Board's decision and remand for further proceedings consistent with this opinion.

### **VACATED AND REMANDED**

## COSTS

Costs to appellant.

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE: ERIK BRUNETTI,**
*Appellant*

---

2023-1539

---

Appeal from the United States Patent and Trademark Office, Trademark Trial and Appeal Board in Nos. 88308426, 88308434, 88308451, 88310900.

---

LOURIE, *Circuit Judge*, dissenting.

"[A] trademark is not a trademark unless it . . . tells the public who is responsible for a product." *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140, 146 (2023); *see* 15 U.S.C. § 1127 (a trademark must "indicate the source" of the applicant's goods and "distinguish [the applicant's] goods . . . from those manufactured or sold by others"). Substantial evidence supports a conclusion that the f-word[1] cannot do so for the classes of goods in Brunetti's applications. I therefore respectfully dissent.

As the record shows, the word is widely used to express an innumerable range of "well-recognized familiar sentiments." *In re Brunetti*, No. 88308426, 2022 WL 3644733, at *21 (T.T.A.B. Aug. 22, 2022) (the word is used generally

---

[1]    Brunetti's applications use the f-word in full. Application Serial Nos. 88308426, 88308434, 88308451, 88310900.

as an "intensifier to express extremes of emotion, negative and positive (e.g., shock), to note disdain, sadness, confusion, panic, boredom, annoyance, disgust, or pleasure; to insult or offend; and to evoke other emotions") (cleaned up). And the word is frequently used in connection with the classes of goods in Brunetti's applications. *E.g.*, *id.* at \*10–11 (showing the word used on bags, jewelry, cellphone cases, etc.). Because of its ubiquity, consumers cannot specifically associate the word with Brunetti's brand. *See id.* at \*21–22.

Brunetti argues that the widely-used words and phrases that the PTO has registered, "love" and "f[] cancer," support his position. But those examples demonstrate why Brunetti's applications were correctly rejected here. "Love," as Brunetti points out, is one of the most common words in the English language. Critically though, "love" does not carry a wide variety of meanings. Rather, it is used to convey primarily one thing—a strong feeling of attachment. "F[] cancer" is similarly limited. By adding the word "cancer," the meaning of the phrase is substantially narrowed to signify a passionate displeasure for the disease. Such words and phrases are not so ubiquitous as to be incapable of acting as a source identifier. This case is different. The f-word is primarily an explicative, expressive of a variety of definitions, or none at all.

The majority well points out shortcomings in the Board's analysis of the failure to function issue. But anyone living in today's society of degraded language can readily tell that the f-word does not indicate the source of the proposed trademarked goods and distinguish them from goods of another. If the Board's overall analysis needs sharpening, this case, which has been pending for most of a decade, surely isn't one in which we need more help from the Board to know the right answer under the law. There will be better cases in which we need more guidance from the Board in order to properly review its decisions.

For the above reasons, I dissent from the majority's decision to vacate a decision that should be affirmed.